**Theresa COLE, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 97–679.

United States Court of Appeals for Veterans Claims.

Dec. 23, 1999.

Sandra E. Booth was on the briefs for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Mary Ann Flynn, Acting Deputy Assistant General Counsel; and John D. McNamee were on the brief for the appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. HOLDAWAY, Judge, filed a concurring opinion.

STEINBERG, Judge:

The appellant, Theresa Cole, widow of veteran Nathaniel Cole, appeals through counsel a December 31, 1996, decision of the Board of Veterans' Appeals (BVA or Board) (1) denying Department of Veterans Affairs (VA) service connection for the cause of the veteran's death, (2) denying a claim of clear and unmistakable error (CUE) in a VA regional office (RO) March 1982 decision, which denied a claim for a rating beyond 50% for schizophrenia, and (3) in doing so denying an earlier effective date for a total disability rating due to schizophrenia, and thereby also denying presumptive dependency and indemnity compensation (DIC) under 38 U.S.C. § 1318(b)(1) on that CUE theory. Record (R.) at 11. The appellant has filed a brief and a reply brief, and the Secretary has filed a brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the BVA decision in part and remand for proceedings consistent with this opinion and dismiss the appeal as to certain matters that the appellant has abandoned on appeal.

## I. Relevant Background

The veteran served in the U.S. Marine Corps from February 1971 to December 1972. R. at 30. His induction physical examination report is silent as to any psychiatric defects. R. at 15–18. His service medical records (SMRs) noted that he reported that in March 1971 he was admitted to a Naval hospital after an acute schizophrenic episode, that he left the hospital without authorization and was declared to be a deserter, and that approximately one year later he surrendered at the Naval hospital. R. at 19, 24, 25. The SMRs also reported, based on preservice clinical records, that the veteran had a history of mental illness with episodes of hospitalization. R. at 27. In August 1972, after having been transferred to another Naval hospital, he was diagnosed by a Naval medical board of physicians as having undifferentiated schizophrenia. R. at 24, 27. That Naval medical board apparently recommended severance from service (R. at 23, 26), and in December 1972 the veteran was discharged under honorable conditions (R. at 30).

In May 1973, a VARO granted service connection for "schizophrenic reaction, undifferentiated type, in partial remission, competent" and assigned a 30% disability rating, effective December 1972. R. at 33. A January 1979 BVA decision denied an increased rating for schizophrenia and denied a claim for a rating of total disability based on individual unemployability (TDIU); although the Board denied the TDIU claim, it reported in the evidence section that the veteran had a 10th grade education and that a physician had concluded that the veteran "would not be able to tolerate work pressures of unskilled work". R. at 69–73. The veteran enrolled in July 1980 in a VA-authorized training program to become a welder. R. at 86. In August 1981, the RO reduced from 50% to 30%, effective November 1981, the schizophrenia (chronic undifferentiated

type) rating that apparently had been effective from February 1978 (that RO action is not in the record). R. at 112.

The veteran filed a Notice of Disagreement (NOD) in September 1981 and also asserted that he could not sustain gainful employment. R. at 114–15. In a January 1982 VA examination report, a neuropsychiatrist diagnosed the veteran as having a "schizophrenic disorder, undifferentiated type" and found:

> The veteran is a 30 year old married male. Hands were shaky. Palms were moist. He was well groomed, cleanly and appropriately dressed. At first appeared quiet and soft spoken. Affect was flattened. Later he became irritable. Revealing considerable amount of underlying hostility and was mildly provocative. He has auditory hallucinations basically someone calling his name. This probably was delusional. He has ideas of reference, probably has poor self control. Memory and orientation are intact. Judgement [sic] and insight are moderately impaired.

R. at 123–24. In March 1982, the RO reinstated the 50% rating. R. at 128. On December 12, 1983, the veteran requested a psychiatric examination, which was conducted by VA on January 5, 1984. R. at 145–50. Based in part on that January 1984 psychiatric evaluation, the RO in October 1984 increased the veteran's schizophrenia rating to 100%, effective January 5, 1984, concluding that he was competent but unemployable. R. at 152–53. In July 1987, the RO continued the veteran's schizophrenia rating at 100% and found that he had become incompetent as of July 13, 1987. R. at 168–69. A May 1990 RO decision proposed a reduction of the rating to 70% (R. at 176–77), but a hearing officer retained the total disability rating and found that the veteran was again competent, as of March 1989 (R. at 182–83).

After the veteran had failed to report for a medical examination, the RO informed him in April 1992 that his benefits would be discontinued if he did not report within 60 days for such an examination. Supplemental (Suppl.) R. at 13–15. In July 1992, the RO attempted to send a benefits-termination notice to the veteran at a California address, but the letter was returned undelivered. Suppl. R. at 16–18. The veteran died on July 13, 1993, in a California prison; the cause of death was listed on the death certificate as cardiopulmonary arrest due to non-Hodgkins lymphoma. R. at 197.

In September 1993, the appellant filed claims for DIC, non-service-connected death-pension, and accrued-benefits. R. at 188. As to DIC, she checked the "No" box (No. 10) on the VA Form 21–534 as to whether she was "claiming that the cause of death was due to service" (*ibid.*) and explained on an attached statement-in-support-of-claim form that the reason that the veteran had not been receiving VA benefits was that he had been unable to report for his medical review because he was incarcerated in a California prison (R. at 192). In another attached such form, dated the same day, she stated: "I don't know if I quality [sic] for this benefit or not but at any rate I know he was 100 percent for years if its not 10 years its [sic] so close they should still considerate [sic] it." R. at 193. The RO notified the appellant in February 1994 that it had denied her DIC claim on the ground that (notwithstanding the express nature of her claim) the veteran's death was not service connected. R. at 200. On June 1, 1994, the appellant disagreed with the RO's DIC determination and requested a re-review of that claim. R. at 202. In July 1994, the RO denied service connection for the veteran's cause of death and denied chapter 35 education benefits, noting that the veteran's benefits had been discontinued in July 1992 because he had failed to report for a review examination. R. at 205. The appellant again responded in August 1994 that in regard to her "claim for DIC benefits" she was "entitled to benefits under the 10[-]year presumptive rule." R. at 214. The appellant filed a VA Form 9

(Substantive Appeal to the Board) in November 1994 without a supporting statement. R. at 224. In a June 1996 written presentation to the BVA, the appellant's representative argued:

> [Of c]oncern to this representative is the failure of the agency of original jurisdiction to consider presumptive DIC in this case. As the widow is now the beneficiary, this claim must consider presumptive DIC. Further, this will allow a retrospective review of the evidentiary record to determine whether or not the effective date of January 5, 1984, is appropriate in this matter.
>
> Our review of the file notes that the examination of January 22, 1982, found the veteran with a flattened affect becoming irritable throughout the interview which revealed a considerable amount of hostility and provocativity. There was evidence of auditory hallucinations and the veteran was delusional as well as ideas of references and judgment and insight were moderately impaired. Diagnostic categorization was of schizophrenic, undifferentiated type. Information contained within the file indicates that the prior examiner was considered by the Administration to be not the appropriate examiner for the 1982 exam.
>
> [W]e believe that the veteran's longstanding actively psychotic condition warranted entitlement to an evaluation of 100 percent prior to 1984 and that on that basis presumptive death [sic] indemnity compensation should have been rendered in this case....

R. at 229–30.

In June 1996, the BVA remanded her DIC claim for consideration of the applicability of the 10–year presumption of service-connected disability prior to death under 38 U.S.C. § 1318(b)(1), based on a claim of CUE in the March 1982 RO decision. The Board stated: "Based upon the report of a VA examination conducted in January 1982, the contention was offered that an effective date prior to January 1984 should be granted based on [CUE]. The representative did not specifically cite the [RO] rating decision in which [CUE] is alleged to have occurred, but appears to have intended the March 1982[RO] rating decision." R. at 233.

The RO determined in July 1996 that there was no CUE in the March 1982 RO decision that had denied a 100% schedular rating for the veteran's service-connected schizophrenia (R. at 237); the RO also denied the appellant's DIC claim on the ground that the 10–year period under section 1318(b)(1) had not been satisfied because the 100% schedular rating was effective in January 1984 and the veteran had died in July 1993 (R. at 240). A July 1996 Supplemental Statement of the Case (SSOC) discussed the appellant's claim of CUE as a collateral attack on the March 1982 RO decision. R. at 243. That same month, the appellant submitted an additional VA Form 9; she argued in support of her DIC claim that the veteran had been unemployable due to his schizophrenia even though he had repeatedly tried to maintain a job. R. at 250–51.

A September 1996 statement of the appellant's accredited representative listed her contentions as follows: "[She contends] that her husband was totally disabled due to his service-connected schizophrenia prior to the October 1, 1984[,] rating which increased said condition to the 100% rate. Specifically, she contends that the 1982 rating conducted at the [RO] should have granted the 100% rate for this condition." R. at 255. The representative concluded: "[W]e do believe that favorable consideration can be given to [CUE] ... in relation to the March 3, 1982[,] VA decision". R. at 256. In a subsequent statement, that representative noted: "The purpose of the remand was to instruct the [RO] to adjudicate the issue of an earlier effective date to January 1982 for a total rating due to individual unemployability based on [CUE] in a March 1982 rating decision." R. at 258. The representative

then argued that there was, in fact, CUE in that 1982 RO decision. R. at 259.

In the December 1996 BVA decision here on appeal, the Board (1) denied service connection for the cause of the veteran's death, (2) denied a claim of CUE in the March 1982 RO decision, which had denied a claim for a schedular rating above 50% for schizophrenia, and (3) in doing so thereby denied an earlier effective date for a TDIU rating due to schizophrenia and thus denied presumptive DIC under section 1318(b)(1). Record (R.) at 11.

The appellant has explicitly abandoned, for purposes of this appeal, her claim that the veteran's death was due to service-connected disabilities (Brief (Br.) at 1), and the Court will thus not review the Board's denial of that claim, *see Green v. Brown,* 10 Vet.App. 111, 114 (1997), one that it appears that she never brought, *see* R. at 188. She also advances no arguments to support an appeal of the Board's determination that there was no CUE in the March 1982 RO decision; thus, the Court considers that she has abandoned that claim on appeal as well. *See Ford v. Gober,* 10 Vet.App. 531, 535–36 (1997); *Degmetich v. Brown,* 8 Vet.App. 208, 209 (1995), *aff'd,* 104 F.3d 1328 (Fed.Cir.1997). The Court will thus dismiss the appeal as to those matters.

## II. Analysis

■ "When a qualifying veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC" pursuant to 38 U.S.C. § 1310 and 38 C.F.R. § 3.5(a) (1998). *Carpenter v. West,* 11 Vet.App. 140, 142 (1998) (*Carpenter I*). "Such a claim is generally treated as an original claim by the survivor, regardless of the status of adjudications concerning service-connected-disability claims brought by the veteran before his or her death." *Green,* 10 Vet.App. at 114; *see also Wingo v. West,* 11 Vet.App. 307, 309 (1998).

Pursuant to 38 U.S.C. § 1318(b)(1), the surviving spouse of a veteran who dies from an injury or disease that is not service connected is also entitled to DIC benefits "in the same manner as if the veteran's death was service connected", if the veteran "was in receipt of or entitled to receive ... compensation at the time of death for a service-connected disability that ... was continuously rated totally disabling for a period of[, inter alia,] 10 years or more preceding death." *See Damrel v. Brown,* 6 Vet.App. 242, 245 (1994). (Alternatively, under section 1318(b)(2), if the veteran was not in such receipt for 10 such years, section 1318 DIC will still be paid if the veteran was in such receipt for not less than five years continuously from his discharge date. This alternative criterion is not involved in this case, and the Court will not refer to it each time that it discusses the 10–year criterion.) The VA implementing regulation for section 1318 specifies:

(a) *Entitlement criteria.* Benefits authorized by section 1318 ..., shall be paid to a deceased veteran's surviving spouse ... in the same manner as if the veteran's death is service connected when ...

(2) The veteran was in receipt of or *for any reason* (including receipt of military retired or retirement pay or correction of a rating after the veteran's death based on clear and unmistakable error) was not in receipt of but would have been entitled to receive compensation at the time of death for a service-connected disablement that either:

(i) Was continuously [sic] rated totally disabling by a schedular or unemployability rating for a period of 10 or more years immediately preceding death; or

(ii) Was continuously rated totally disabling by a schedular or unemployability rating from the date of the veteran's discharge or release from active duty for a period of not less than 5 years immediately preceding death.

38 C.F.R. § 3.22(a)(2)(i) (1998) (emphasis added).

In *Green,* this Court concluded that a new right, and thus a new basis or theory

for a section 1318 DIC claim, as contemplated in *Spencer v. Brown,* 4 Vet.App. 283, 290 (1993), *aff'd,* 17 F.3d 368 (Fed.Cir. 1994), was created by the "1982 addition of the words 'or entitled to receive'" to section 1318(b), and that, therefore, under "the applicable law and regulation in section 1318(b) and § 3.22(a)(2)", a veteran's surviving spouse "is given the right to attempt to demonstrate that the veteran hypothetically would have been entitled to receive a different decision on a service-connection-related issue ... based on evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable." *Green,* 10 Vet.App. at 118, 119. In *Carpenter I,* the Court applied *Green* and held that an "entitled to receive" theory "is an intrinsic part of a section 1318 claim" and that "a CUE claim is not the only way for a survivor to show, pursuant to section 1318, that a veteran would have been entitled to receive total disability compensation for the 10 years immediately preceding death". Accordingly, the Court vacated the BVA decision in question and remanded for adjudication of the section 1318(b) "entitled to receive" claim under *Green. Carpenter I,* 11 Vet. App. at 147; *accord Wingo,* 11 Vet.App. at 311 (also vacating BVA decision and remanding for adjudication of section 1318 hypothetically "entitled to receive" claim under *Green* ).

Thus, under the umbrella of a general section 1318 DIC claim, a VA claimant may receive section 1318 DIC under any one of the three following theories: (1) If the veteran was in actual receipt of compensation at a total disability rating for 10 consecutive years preceding death, *see* 38 U.S.C. § 1318(b)(1); (2) if the veteran would have been entitled to receive such compensation but for CUE in previous final RO decisions and certain previous final BVA decisions, *see also* part II.B., below; or (3) if, on consideration of the "evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively

applicable", the veteran hypothetically would have been entitled to receive a total disability rating for a period or periods of time, when added to any period during which the veteran actually held such a rating, that would provide such a rating for at least the 10 years immediately preceding the veteran's death, *see Carpenter I, supra; Green,* 10 Vet.App. at 118. On the instant facts, the appellant presented a general DIC claim—that is, one not expressly limited to any one of the three available section 1318 DIC theories—in her initial September 1993 application, even though the RO did not recognize that she had submitted a section 1318 claim until after the Board's June 1996 remand (which the Board had limited to CUE in the March 1982 RO decision). Before going further, however, we must determine whether the Court has jurisdiction over the matters of the section 1318 theories that the Board did not address.

### A. NOD for Section 1318 Claim

When the RO denied the appellant's DIC claim in 1994 (R. at 200, 205), she filed a timely NOD in August 1994 as to her "entitle[ment] to benefits under the 10[-]year presumptive rule" (R. at 214)—which is presumably a reference to section 1318 DIC. *See* 38 U.S.C. § 7105(b)(1). Subsequently, through her representative, she argued to the BVA in June 1996 that the "agency of original jurisdiction" had failed "to consider presumptive DIC in this case", and sought "a retrospective review of the evidentiary record to determine whether or not the effective date of January 5, 1984, is appropriate in this matter." R. at 229–30. The Board then remanded her section 1318 DIC claim for consideration by the RO, but, as noted above, the Board specifically limited that consideration to whether the March 1982 RO decision had contained CUE. R. at 233. For the reasons that follow, the Court holds that the Board erred in imposing such a limitation on the RO's consideration.

■ This Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir.1991); *Skinner v. Derwinski,* 1 Vet.App. 2, 3 (1990). In general, the Court has jurisdiction to review a final BVA decision only where an NOD was filed on or after November 18, 1988, as to the underlying RO decision. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; 38 U.S.C. § 7105; *Velez v. West,* 11 Vet.App. 148, 157 (1998) ("Court has no jurisdiction over an issue absent a post-November [17], 1988, NOD, expressing disagreement with an RO's decision on that issue or with an RO's failure to adjudicate that [issue]"); *see also Barrera v. Gober,* 122 F.3d 1030, 1031 (Fed.Cir.1997); *Grantham v. Brown,* 114 F.3d 1156, 1157 (Fed.Cir.1997), *rev'g,* 8 Vet.App. 228 (1995). *But see* 38 U.S.C. § 7111 (permitting original claim to Board that prior Board decision contained CUE); Revision of Veterans' Benefits Decisions Based on Clear and Unmistakable Error Act (CUE Act), Pub.L. No. 105–111, § 1(c)(2), 111 Stat. 2271, 2272 (1997) (found at 38 U.S.C. § 7251 note) (permitting appeal to Court of BVA denial (as to CUE in a BVA decision) without jurisdiction-conferring NOD).

■ In *Ledford v. West,* the Federal Circuit held that all applicable "legal reasoning supporting ... a challenge [to a denial of a claim] need not appear in the NOD" filed as to that denied claim because "[t]he Board is clearly empowered to determine which law applies to the facts presented". *Ledford,* 136 F.3d 776, 780–81 (Fed.Cir.1998). Based on that premise, the Federal Circuit in *Collaro v. West* held that where an appellant has filed an NOD sufficient to place a particular claim into appellate status, this Court has jurisdiction over all issues that are "appropriately identified [from] the radix of his [NOD]". *Collaro,* 136 F.3d 1304, 1310 (Fed.Cir. 1998). "*Ledford* and *Collaro* support the proposition that this Court has jurisdiction over claims that an appellant has reasonably raised to the RO and that the BVA has failed properly to adjudicate, and that the Court may entertain any arguments made in support of such claims when presented with a 'vague' or general NOD or, at least, one that does not limit the Court's consideration of the arguments made". *Buckley v. West,* 12 Vet.App. 76, 82–83 (1998).

■ In this case, the appellant's August 1994 NOD expressed disagreement, based on her asserted "entitle[ment] to benefits under the 10[-]year presumptive rule" of section 1318(b)(1), with the RO's February 1994 denial of her DIC claim. R. at 214. Given the initial statements by the appellant in conjunction with her 1993 application, she had filed a general claim for section 1318 DIC and had not limited her claim to only one particular theory, or to only two particular theories, of the available three theories for such a claim. Having filed such a general claim for section 1318 DIC, which she thereafter augmented in her June 1996 argument to the Board by calling for "a retrospective review of the evidence" (R. at 229–30), *see Collaro, supra,* the appellant was entitled to present thereafter at any time prior to the final BVA decision on that claim evidence and argument on any one of the three available section 1318 theories. *See* 38 C.F.R. § 20.1304 (1998) (permitting submission of additional evidence after certification of appeal to Board); *Kutscherousky v. West,* 12 Vet.App. 369, 371 (1999) (per curiam order) (discussing 38 C.F.R. § 20.1304). Accordingly, the Court holds, on de novo review, that her August 1994 NOD was a general NOD that must be read as "expressing dissatisfaction or disagreement with an adjudicative determination ... and a desire to contest the result" as to the

RO's failure to adjudicate her section 1318 DIC claim, 38 C.F.R. § 20.201, which, as we have noted, *Carpenter I* held includes a CUE-based "entitled to receive" theory and a hypothetically "entitled to receive" theory, *Carpenter I*, 11 Vet.App. at 147. *See Collaro* and *Ledford*, both *supra; Fenderson v. West*, 12 Vet.App. 119, 128 (1999); *Buckley, supra; Beyrle v. Brown*, 9 Vet.App. 24, 27 (1996).

### B. Section 1318 DIC CUE– Based Theory

■ Where a veteran, but for CUE in a prior adjudication, would have met the 10–year requirement of section 1318(b)(1), DIC will be awarded to the deceased veteran's surviving spouse. *See* 38 C.F.R. § 3.22(a)(2) (1998); *Damrel, supra.* In the instant appeal, the appellant asserts that the Board erred by misidentifying the 1982 RO decision as the target of her CUE attack and that there was CUE in the October 1984 RO and the 1979 BVA decisions. Br. at 7, 9, 11.

■ Decisions by an RO or the BVA that have become final, as have the 1984 RO and 1979 BVA decisions involved here, generally may not be reversed or amended except upon a successful collateral attack showing CUE. *See* 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a) (1998); *Mason (Sangernetta) v. Brown*, 8 Vet.App. 44, 51 (1995) (generally, earlier effective date than awarded in previous decision may be awarded only if there was CUE in that decision or it never became final); *Crippen v. Brown*, 9 Vet.App. 412, 418 (1996); *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993); *see also* 38 U.S.C. §§ 5108, 7105(c); *cf.* 38 U.S.C. § 5110(i) (when previously disallowed claim is reopened and allowed on basis of new and material evidence in form of service department records, effective date is date such disallowed claim was filed).

Section 3.105(a) of title 38, Code of Federal Regulations, provides:

Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a). In *Russell v. Principi*, the Court defined CUE as follows:

Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE is] the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.

*Russell*, 3 Vet.App. 310, 313–14 (1992) (en banc); *see also Bustos v. West*, 179 F.3d 1378, 1380 (Fed.Cir.1999) (expressly adopting the "manifestly changed the outcome" language in *Russell, supra* ), *cert. denied*, —— U.S. ——, 120 S.Ct. 405, 145 L.Ed.2d 315 (1999). "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior ... decision." *Russell*, 3 Vet. App. at 314. "In order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Id.* at 313; *see also Damrel v. Brown*, 6 Vet.App. 242 (1994). Moreover, a CUE claim must identify the alleged error(s) with "some degree of specificity". *Crippen*, 9 Vet.App. at 420; *Fugo*, 6 Vet. App. at 44 ("to raise CUE there must be some degree of specificity as to what the alleged error is and ... persuasive reasons must be given as to why the result would have been *manifestly* different").

■ Although the Court has not previously outlined exactly how much specificity is required in order to raise a sec-

tion 1318 CUE theory, we hold today that a section 1318 DIC claimant must provide at least the following: The date or approximate date of the decision sought to be attacked collaterally, or otherwise provide sufficient detail so as to identify clearly the subject prior decision, and must indicate how, based on the evidence of record and the law at the time of the decision being attacked, the veteran would have been entitled to have prevailed so as to have been receiving a total disability rating for ten years immediately preceding the veteran's death. *See Crippen* and *Fugo,* both *supra.* Here, the appellant did not at any point even identify to the Board or the RO that she wished to challenge for CUE the 1984 RO decision as part of her section 1318 DIC "entitled to receive" claim, let alone provide the requisite specificity as to why her section 1318 CUE theory should be successful and would have sustained her claim here. Indeed, neither she nor her representative ever challenged the Board's limitation of the CUE remand to the 1982 RO decision. *See* R. at 253–56, 258–60. Accordingly, we hold that no such CUE theory was ever raised by the appellant and properly presented to the Board. *See Carpenter,* 11 Vet.App. at 144–45 (holding that Court could not then consider under section 1318 appellant's claim of CUE against 1984 BVA decision because "appellant's section 1318 DIC claim specifically raised CUE only as to the 1983 RO decision" and new CUE Act making prior BVA decision also subject to CUE attack, 38 U.S.C. § 7111, requires that the claimant have submitted such CUE claim to Board); *cf. Russell,* 3 Vet.App. at 318–20 (Court remanded for adjudication of CUE claim that BVA had failed to adjudicate where claimant had filed jurisdiction-conferring 1989 NOD as to that claim).

██ As to the January 1979 BVA decision, the appellant admits that she did not specifically raise a claim that there was CUE in that decision. Br. at 12–13. Nonetheless, she asserts that the Court should still find that such a claim of CUE

in the 1979 BVA decision was "reasonably raised" below on the ground that "the *Carpenter* decision held that even though the appellant therein had specifically raised CUE only as to a prior RO decision and not as to the BVA decision, the appellant was now entitled to attack the BVA decision on CUE grounds" as a result of the 1997 enactment of 38 U.S.C. § 7111 by the CUE Act. Br. at 12–13; *see Carpenter I,* 11 Vet.App. at 145; *see generally Dittrich v. West,* 163 F.3d 1349, 1353 (Fed.Cir. 1998); *Donovan v. West,* 158 F.3d 1377, 1380–81 (Fed.Cir.1998). However, as we stated recently in the context of an application for attorney fees and expenses submitted in the *Carpenter* case under the Equal Access to Justice Act, 28 U.S.C. § 2412(d):

> It is clear from the Court's [*Carpenter I*] opinion ... that the Court remanded only the *Green* section 1318 DIC claim; as to the 1997 CUE Act, the Court concluded that the appellant was 'now entitled to attack the 1984 BVA decision on CUE grounds', and specifically referred to such a CUE claim under the CUE Act as a possible *future* course of action ('if' the appellant presents such a CUE claim on remand). **The Court did not find that the Court had jurisdiction to review such a claim before it was raised to the Board and the Board had [had] a chance to rule on it in the first instance.**

*Carpenter (Angeline) v. West,* 12 Vet.App. 316, 320 (1999) (*Carpenter II*) (emphasis added). Accordingly, for the reasons set forth above as to a claim of CUE in the 1984 RO decision, and also because new section 7111 expressly requires that a claim of CUE in a prior BVA decision must be raised by the claimant by a "request ... submitted directly to the Board", 38 U.S.C. § 7111(e) (or the Board "may", on its "own motion", review a prior Board decision for CUE, 38 U.S.C. § 7111(c)), the Court concludes that in order for a claimant to be entitled to an adjudication of a CUE attack on a final

278

*BVA* decision as part of a section 1318 claim on an "entitled to receive" theory, the claimant must assert such a section 1318 CUE theory expressly to the BVA. Because the appellant never raised below such a CUE theory as to the 1979 BVA decision, that matter is not before the Court or pending before the Board. *See Dittrich* and *Carpenter II*, both *supra.* Of course, the appellant remains free to bring such a section 1318 CUE-based claim, or one mounted against the 1984 RO decision, because those theories have never been presented by her or adjudicated in any final RO decision. *See Russell,* 3 Vet.App. at 315 (as to res judicata effect of CUE adjudications); *see also Link v. West,* 12 Vet.App. 39, 44 (1998).

## C. *"Entitled to Receive" Theory*

The appellant requests a remand for a Board determination under section 1318 of whether the veteran hypothetically would have been "entitled to receive" a total disability rating for at least the ten years immediately prior to his death. Br. at 13–14. We start by holding that the Board decision on appeal did not adjudicate the appellant's hypothetically "entitled to receive" theory. We reach that conclusion because the Board's entire discussion was related to a CUE attack as to the 1982 RO decision. In addition, at the time of the BVA decision here on appeal, this Court had not yet decided the *Green* or the *Carpenter I* case, and there is no indication that VA was then recognizing any basis other than a CUE analysis for a section 1318 "entitled to receive" theory. *See Green,* 10 Vet.App. at 117. Accordingly, as in *Wingo, supra,* and *Carpenter I,* "the Court holds that the Board erred in treating the appellant's section 1318 claim as if it could be pursued only by means of a CUE showing, and this matter will be remanded for adjudication of [her] section 1318 'entitled to receive' DIC claim". *Carpenter I,* 11 Vet.App. at 147.

■ Prior to this opinion, the Court has not addressed in any of its section

1318 opinions what specifically an appellant must argue in order to obtain an adjudication by the Board of a section 1318 hypothetically "entitled to receive" theory. In this respect, we note that the nature of a hypothetically "entitled to receive" section 1318 claim is analogous to a CUE-based section 1318 "entitled to receive" claim in that the former may succeed on the basis of only the evidence and law that existed at a fixed point in the past. *Cf. Sutton* and *Fugo,* both *supra.* Accordingly, for much the same reasons as we reached the conclusion set forth in part II.B., above, as to a CUE-based section 1318 theory, we hold as to a section 1318 hypothetically "entitled to receive" theory that a claimant must, prior to the Board decision, set forth how, based on the evidence in the veteran's claims file, or under VA's control, at the time of the veteran's death and the law then applicable, *see Wingo,* 11 Vet.App. at 312; *Carpenter I,* 11 Vet.App. at 145 (quoting *Green,* 10 Vet. App. at 118), the veteran would have been entitled to a total disability rating for the 10 years immediately preceding the veteran's death. *See* 38 C.F.R. § 20.1304; *Kutscherousky, supra.*

Because this specificity requirement constitutes a matter not heretofore addressed in prior section 1318 cases and not, therefore, applied to the prior section 1318 hypothetically "entitled to receive" claim theories for the adjudication of which such cases were remanded, *see, e.g., Wingo, supra; Carpenter I,* 11 Vet.App. at 147 (quoting *Green,* 10 Vet.App. at 118), the appellant will have an opportunity to present on remand, with the degree of specificity required by this opinion, any section 1318 DIC "entitled to receive" claim theory that she seeks to have adjudicated. *See Kutscherousky,* 12 Vet.App. at 372–73. In this regard, we are mindful of the need in the future to treat similarly situated section 1318 DIC claimants, seeking review in this Court, where the BVA decision predates the date of this opinion, in a manner similar to the treatment being accorded to

this appellant—although the Court might wish in such a situation to require an appellant to proffer to the Court the "entitled to receive" argument that he or she would make on remand if such a remand were made. However, as to section 1318 DIC claims that have been presented to the BVA prior to the date of this opinion—either through a general such claim or one limited to one or more "entitled to receive" theories—but have not yet been adjudicated by the Board, it will now be the claimant's responsibility before the BVA decision to provide the specificity of detail required under this opinion in order for such a claimant to obtain an adjudication of a particular section 1318 hypothetically "entitled to receive" theory.

In connection with the remand provided for herein, the Board must take into account the following considerations if it seeks to apply, adversely to the appellant, 38 C.F.R. § 20.1106 to any adjudication carried out on remand.

### D. Remand Proceedings and Effect of 38 C.F.R. § 20.1106.

The Secretary argues that the appellant cannot, as a matter of law, be granted an effective date earlier than January 5, 1984 (the effective date awarded for the 100% schedular rating), because of the effect of 38 C.F.R. § 20.1106 (1998), discussed below. Specifically, the Secretary contends that under the "[e]xcept with respect to benefits under the provisions of 38 U.S.C. § 1318" clause of § 20.1106, section 1318 DIC claimants in a case, such as this, where the claim was filed after the effective date of that regulation, are not entitled to have their claims adjudicated without regard to prior dispositions; in sum, it is the Secretary's position that an "entitled to receive" theory is precluded if an adverse decision makes § 20.1106 applicable. Br. at 8. It appears that the appellant argues in response that, even if § 20.1106 applies here, the veteran's claim for service-connected TDIU, initiated in September 1981 (R. at 114–15) but never adjudicated, provides an unadjudicated claim to

which she can now hitch her hypothetically "entitled to receive" theory. Reply at 8–9. We note that the effect of the "except" clause in § 20.1106 has not been considered by the Court previously. In *Carpenter I*, the Court noted specifically that the appellant's section 1318 DIC claim had been filed before the March 1992 effective date of the amendment adding the "except" clause to § 20.1106. *Carpenter I*, 11 Vet.App. at 146.

Entitled misleadingly, "Claim for death benefits by survivor—prior **unfavorable** decisions during veteran's lifetime", § 20.1106 provides:

> Except with respect to benefits under provisions of 38 U.S.C. § 1318 and certain cases involving individuals whose [VA] benefits have been forfeited for treason or for subversive activities under the provisions of 38 U.S.C. § 6104 and 6105, issues involved in a survivor's claim for death benefits will be decided without regard to **any** prior disposition of those issues during the veteran's lifetime.

38 C.F.R. § 20.1106 (emphasis added).

At the outset, the Court notes that § 20.1106 applies only when there has been a "prior disposition" and that there was no such disposition by the RO or the Board of any TDIU claim by the veteran. Hence, contrary to the Secretary's contention (*see* Br. at 8–9), it is clear that § 20.1106 has no preclusive effect in this case on a hypothetically "entitled to receive" theory **based upon TDIU**.

If the Board seeks to apply § 20.1106 on remand to a section 1318 DIC hypothetically "entitled to receive" theory that is presented on remand by the appellant with the requisite specificity as to the possibility of a 10–year **schedular** total disability rating, the Court notes, in the context of the facts of this case, that the meaning of § 20.1106 is not clear with respect to either any initiation or any termination of a 10–year schedular total disability rating for the veteran.

First, as a general matter, although § 20.1106 clearly provides some limitation on adjudicating a section 1318 claim, it is unclear exactly what effect a prior adjudication has. It would appear that § 20.1106 means that at the least when claims are *not* in the category to be considered "without regard to any prior disposition of those issues" (38 C.F.R. § 20.1106), which is the case for section 1318 claims, then those prior dispositions *are* to be considered in some fashion—that is, the adjudication is to be made *with* regard to (technically, not "without regard to") those prior determinations. Second, it would seem that such consideration of prior adverse dispositions cannot be totally preclusive. For example, historically, claims of CUE have been allowed. *See* 38 C.F.R. § 3.22(a)(2). In addition, 38 U.S.C. § 7104(b) is the authority cited in the Code of Federal Regulations as the basis for § 20.1106. In that regard, section 7104(b) begins: "Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened ... "; and section 5108 provides that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed ..." the Secretary is required to reopen the disallowed claim (38 U.S.C. § 5108). It is most unclear what claims to reopen under sections 5108 and 7104(b) have to do with the mandate of § 20.1106, let alone with the "[e]xcept" clause that precedes it and applies to section 1318. Third, the Court has examined the regulatory history of § 20.1106 and not found the situation much enlightened thereby. In 1989, VA explained the new provision as follows:

§ 20.1106: Rule 1106. Based on old Rule of Practice 96 (38 [C.F.R. § ] 19.196). The old rule was inconsistent with 38 [C.F.R. § ] 3.22(a)(2) which, in effect, requires that it be shown that there was [CUE] in prior rating decisions which failed to give a veteran a total rating for the required period of time in order to qualify for "[section ]410(b)" benefits. (Former 38 U.S.C.[§ ] 410(b) is now 38 U.S.C. [§ ]418, see [s]ection 1403 of Public Law 100–687.) 38 U.S.C. [§ ]3504(c) forbids the payment of benefits to any person after September 1, 1959, based on the service of an individual before the date of a treasonous act if that individual's [VA] benefits have been forfeited for treason. There is a similar prohibition in 38 U.S.C. [§ ]3505(a) pertaining to cases involving forfeiture for subversive activities. These provisions are now recognized.

54 Fed.Reg. 34334, 34337–38 (1989). Fourth, the Court notes that we have recently held that the "or entitled to receive" language of section 1318 must have the same meaning as the "or was entitled to receive" language of 38 U.S.C. § 1311 (which provides for increased amounts of DIC to be paid to certain surviving spouses). *Hix v. West,* 12 Vet.App. 138, 140–41(1999); *see also Carpenter I,* 11 Vet.App. at 145–46; *Green,* 10 Vet.App. at 117–18. However, no mention of section 1311 is made in § 20.1106.

As to the possibility of a 10–year total disability rating on a schedular basis, as noted above, the Secretary argues here that, in the absence of a valid CUE claim, § 20.1106 precludes an earlier effective date for a total rating because of "the several rating decisions regarding a claim for [an] increase[d] rating issued during the veteran's lifetime", presumably including the October 1984 RO decision assigning the veteran a 100% schedular rating effective on January 5, 1984. Br. at 8–9. Contrary to the Secretary's contention, if § 20.1006 were to apply beyond specific *denials* of claims during the veteran's lifetime, so that it would apply to affirmative decisions such as the 1984 RO decision that awarded a 100% schedular rating effective January 5, 1984, we would have a situation where this appellant would be worse off because the veteran had obtained a *favorable* 1984 RO decision than she would have been had the veteran never received such a rating. Accordingly, if

the Board on remand seeks to apply § 20.1106 adversely to the appellant as to the initiation of the possible 10–year period, the Board needs to consider the extent to which that regulation is consistent with 38 U.S.C. § 1318 and 38 C.F.R. § 3.22 ("for any reason ... would have been entitled to receive compensation" at a total rating for "10 or more years immediately preceding death", 38 C.F.R. § 3.22(a)(2)(i)).

The Secretary argues that the 100% schedular rating was withdrawn in July 1992 (*see* Suppl. R. at 16) and that the appellant could therefore not demonstrate, even hypothetically, that the veteran was entitled to receive a total disability rating for the 10 years immediately prior to his death. Br. at 9. However, the Court notes that both the RO and the BVA in fact stated that the veteran was rated totally disabled for his service-connected schizophrenia disability at the time of his death. R. at 4, 240. In that regard, before the Board could on remand use § 20.1106 adversely to the appellant as to the termination of a period of time during which the veteran would be hypothetically "entitled to receive" a 100% schedular rating, the Board would need to address the following questions, in addition to the considerations outlined in the last sentence of the preceding paragraph: (1) Was the veteran's 100% schedular rating terminated in July 1992?; (2) if so, was he properly notified of that termination in terms of whether the RO sent such notice to his last address of record and complied with other such then-applicable requirements pursuant to 38 U.S.C. § 7104(e) and 38 C.F.R. § 3.105(e)?; (3) if he was properly terminated, what is the effect of 38 C.F.R. § 20.1106 on the appellant's claim insofar as "the evidence in the veteran's claims file or VA custody prior to the veteran's death" (*Green*, 10 Vet.App. at 119) shows that the veteran was in prison and was still totally disabled after July 1992?; and (4) if there was a proper termination of the 100% schedular rating and it is binding on the appellant for purposes of section 1318,

was the veteran nonetheless "entitled to receive" a TDIU rating at the time of such schedular termination?

In closing, the Court notes that, in light of the meager state of the record supporting a hypothetically "entitled to receive" section 1318 DIC theory in this case, it is a relatively close question as to whether this case should be remanded for adjudication of that theory. Although the Court is giving the benefit of the doubt on this issue to *this* appellant in light of the recency of our opinions in *Green* and *Carpenter I,* any future section 1318 appellant should take pains to designate the record so as to include all potentially relevant documents that might be seen as substantiating a hypothetically "entitled to receive" theory. As to the appellant's raising CUE-based "entitled to receive claims", we note as did the Court in *Carpenter I:*

> [I]f the appellant on remand presents a claim of CUE in the 1984 [RO or 1979] BVA decision, the Court "trusts that the BVA and the Secretary will expeditiously treat this matter", *Nash v. West,* 11 Vet.App. 91, 94 (1998); *Rivers v. Gober,* 10 Vet.App. 469, 473 (1997) ("Court presumes that the Secretary will act expeditiously" to adjudicate CUE claim not decided by BVA as to which Court dismissed appeal, citing "*cf.*" to [the Veterans' Benefits Improvements Act of 1994 (VBIA), Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note)]); on the other hand, the appellant will be free to request that the remanded ... ["entitled to receive"] section 1318 DIC claim be referred to the RO for adjudication there first before any CUE claims are addressed by the Board under new section 7111 [or otherwise]. *Cf. Sutton v. Brown,* 9 Vet.App. 553, 569–70 (1996).

*Carpenter I,* 11 Vet.App. at 147.

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the

parties' pleadings, the Court vacates the December 31, 1996 BVA decision in part and remands as to the appellant's unadjudicated section 1318 hypothetically "entitled to receive" DIC claim to permit her to provide sufficient specificity as to such claim so as to require the Board to issue a new decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1318(b), 7104(a), (d)(1); 38 C.F.R. §§ 3.22(a), 20.1106; *Carpenter I* and *Green,* both *supra; Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 ·of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). On remand, the appellant will be free to submit additional evidence, as appropriate, and argument on the remanded claim in accordance with *Kutscherousky, supra.* The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West,* 11 Vet.App. 468, 472 (1998). The appeal is dismissed as to those parts of the Board decision that denied DIC on the basis of service connection for the cause of the veteran's death and on the basis of a claim of CUE in the 1982 RO decision.

VACATED AND REMANDED IN PART; APPEAL DISMISSED IN PART.

HOLDAWAY, Judge, concurring:

I concur in the opinion except for Part II.D that discusses the effect of 38 C.F.R. § 20.1106. In that part, the Court is providing the Board remand instructions regarding an issue that is not before the Court and may never arise as part of the appellant's claim for DIC. Therefore, the discussion regarding section 20.1106 is mere dicta. *Cf. Marso v. West,* 13 Vet. App. 260 (1999).