**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**


No. 98-1632


JACQUELINE C. SACHS , APPELLANT,


V.


HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.


On Appeal from the Board of Veterans' Appeals


(Decided    July 27, 2000    )


*Hannah T. Carvey*, of Oakton, Virginia, was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Michael A. Leonard*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before FARLEY, HOLDAWAY, and IVERS, *Judges*.

IVERS, *Judge*: The appellant appeals a July 9, 1998, decision of the Board of Veterans' Appeals (BVA or Board) that denied entitlement to service connection for the cause of the veteran's death.  Record (R.) at 3, 12.  Both parties filed briefs and the veteran filed a reply to the Secretary's brief.  This appeal is timely, and the Court has jurisdiction over the case pursuant to section 7252(a) of title 38, United States Code.  For the reasons set forth below, the Court will affirm the Board's decision in part, and vacate and remand in part.


**I.  FACTS**

The veteran, Richard Sachs, served on active duty in the U.S. Army from December 2, 1941, to August 15, 1946.  R. at 140.  Due to the incurrence of multiple combat-related injuries, in July 1947 the veteran was granted service connection for disabilities involving, inter alia, his right thigh, right knee, right neck, right chest, right shoulder, right lower extremity residuals of a fractured femur,

and left chest. R. at 166. The regional office (RO) awarded a 100% disability rating, effective August 16, 1946, to April 22, 1947, and an 80% evaluation from April 23, 1947. *Id*. In a September 17, 1959, rating decision, the RO reduced the veteran's disability rating to 50%, effective November 17, 1959. R. at 200. However, in a June 11, 1968, rating decision, the RO increased the veteran's total rating to 70% disabling. R. at 278-79.

On January 15, 1996, the veteran died. R. at 416. His death certificate was prepared by Dr. Richard Beatty, who listed hepatocellular carcinoma as the immediate cause of death, and hemochromatosis or hemosiderosis as conditions that led to the immediate cause. *Id*. "Hepatocellular carcinoma" is defined as a "primary [cancer] of the liver cells." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 265-66 (28th ed. 1994) [hereinafter DORLAND'S]. "Hemochromatosis" is a disorder that causes tissue damage and dysfunction to the liver (DORLAND'S at 747); whereas, "hemosiderosis" is defined as "a focal or general increase in tissue iron stores without associated tissue damage. *Cf*. hemochromatosis" (DORLAND'S at 751). Dr. Beatty also listed diabetes mellitus, osteoarthritis, peripheral vascular disease, and thrombocytopenia as "[o]ther significant conditions contributing to death but not resulting in the underlying cause." R. at 416. "Thrombocytopenia" is a "decrease in the number of blood platelets." DORLAND'S at 1707.

On March 20, 1996, the appellant filed a claim for dependency and indemnity compensation (DIC) for the cause of the veteran's death. R. at 429, 441-42. She argued that the "underlying causes and significant conditions were [the] contributing, and aggravating factors in causing his death." R. at 429. In support of her claim, the appellant submitted a March 11, 1996, statement from Dr. Beatty who opined that the veteran's death was "at least in part contributed to by his chronic debilitating condition." R. at 432. He stated, "Although [the veteran's service-connected disabilities] were not directly responsible for his ultimate demise, I do believe that they played a significant role in his ultimate death." *Id*. In a May 1, 1996, statement, Dr. Beatty added, "I do believe that the total sum of his injuries he sustained while being in service did contribute to his death." R. at 459.

During an August 6, 1996, hearing at the RO, the appellant testified that the medication that the veteran received from a VA clinic "might have contributed to his death because it is [ ] known [ ] to cause liver problems." R. at 495. The appellant referred to Feldene and Clinoril as medications that the veteran had taken "a long time ago," which she also described as medications known to

cause liver problems.  R. at 492.

Following a hearing officer's January 23, 1997, denial of the appellant's claim, on August 8, 1997, the Board remanded the case with instructions that the RO obtain a medical opinion as to whether any of the veteran's service-connected disabilities "contributed substantially or materially" to the cause of his death (R. at 548) and to "make a specific request for the actual treatment records of the veteran from Richard W. Beatty, M.D., dated from September 1994 to January 1996."  *Id.*

Upon remand, the RO obtained a medical opinion from Dr. Barbara Fleming.  R. at 607-08. Following a review of the claims folder, Dr. Fleming stated:

> It is not likely that any of the veteran's service-connected disabilities contributed substantially or materially to cause his death.  It is not likely at all that any of his service-connected disorders aided or lent assistance to the production of death.  It is not likely at all that any of his service-connected disabilities was causally related to his death.  There is no reasonable basis in the medical evidence in the record to conclude that a service-connected condition was of any severity to have a material influence in accelerating his death.

R. at 608.  Pursuant to the Board's remand instructions, the RO also attempted to obtain treatment records from Dr. Beatty, but he did not respond.  R. at 555.

Following a February 2, 1998, Supplemental Statement of the Case that denied service connection for the cause of the veteran's death (R. at 610-13), the Board rendered the decision here on appeal.  R. at 1-13.

## II. ANALYSIS
### A.  38 U.S.C. § 1310

Pursuant to 38 U.S.C. § 1310, DIC is paid to a surviving spouse of a qualifying veteran who died from a service-connected disability.  *See Hanna v. Brown*, 6 Vet.App. 507, 510 (1994).  A veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death.  38 C.F.R. § 3.312(a) (1996).  A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1996).  To be a contributory cause of death, the disability must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent

3

assistance to the production of death." 38 C.F.R. § 3.312(c) (1996).

Determining whether the cause of the veteran's death is service connected is a finding of fact reviewed under the "clearly erroneous" standard of review. *See Swann v. Brown*, 5 Vet.App. 229, 232 (1993). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA . . . [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4).

While the statements from Dr. Beatty submitted by the appellant in support of her claim were sufficient to well ground her claim (R. at 432, 459), in an adjudication of the merits of the case the Board determined that the weight of the evidence was against the appellant in light of Dr. Fleming's opinion. R. at 8-12. There is a plausible basis in the record for this conclusion by the Board. Moreover, the Board provided an adequate statement of the reasons or bases for its decision. In doing so, the Board provided adequate reasons and bases for its decision. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995) ("It is not error for the BVA to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons and bases."); *see also Wood v. Derwinski*, 1 Vet.App. 190 (1991) (The Board, not the Court, has the duty to assess the credibility and weight to be given to the evidence of record). It cannot be said to be clearly erroneous.

## B. 38 U.S.C. § 1318(b)

In *Hix v. West*, the Court determined that an appellant with a claim that was factually similar to that of Mrs. Sachs may assert entitlement to an increase in DIC under a hypothetical determination that the veteran was "entitled to" a total disability rating for at least eight years immediately preceding his death. *Hix*, 12 Vet.App. 138, 141 (1999); *see* 38 U.S.C. § 1311(a)(2). Pursuant to section 1311(a)(2), DIC is increased "in the case of the death of a veteran who at the time of death was in receipt of *or was entitled to receive* . . . compensation for a service-connected disability that was rated totally disabling for a continuous period of at least eight years immediately preceding death." *Hix* resolves the meaning of the language "or was entitled to receive" by comparing it to the history of subsection (b) of section 1318 of title 38, United States Code, which allows DIC even though the veteran's service-connected disability did not cause his death. Section 1318(b) uses the

same language and only differs from section 1311(a)(2) in that it allows for two alternative minimum time periods for the total disability rating. The Court determined that section 1318(b) "entitles the claimant to obtain a determination of whether the deceased veteran, prior to death, hypothetically would have been entitled to receive an award of service connection so as to qualify under that statute." *Hix*, 12 Vet.App. at 141; *see also Wingo v. West*, 11 Vet.App. 307, 311 (1998); *Carpenter v. Gober*, 11 Vet.App. 140, 145-46 (1998); *Green v. Brown*, 10 Vet.App. 111, 118-19 (1997).

However, in its decision in *Cole v. West*, 13 Vet.App. 268 (1999), the Court analyzed whether it would have jurisdiction over a section 1318 DIC claim that had not been first adjudicated by the Board. In that case, the Court concluded that the appellant's reference to the "10 year presumptive rule," coupled with her representative's argument that VA failed to consider the "presumptive DIC" provisions, conferred jurisdiction. *Id*. at 274-75. In the instant case, unlike the widow in *Cole*, the appellant did not argue to the Board that, pursuant to section 1318, the veteran was entitled to a total disability rating prior to death. Furthermore, there is no RO decision, no jurisdiction-conferring Notice of Disagreement, and no final Board decision as to that issue. Thus, the Court lacks jurisdiction to consider appellant's argument. *See Lyon v. Brown*, 5 Vet.App. 507 (1993) (The Court dismissed for lack of jurisdiction where the appellant failed to file an NOD as to a section 1318 DIC claim); *Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998).

## C. Medication

A claim for DIC is a new claim; therefore, like any other claim for service-connected benefits, a DIC claim must be well grounded. *See Darby v. Brown*, 10 Vet.App. 243, 245 (1997); *Johnson v. Brown*, 8 Vet.App. 423, 426 (1995); 38 U.S.C. § 5107(a). The Board's determination of whether a claim is well grounded is a matter of law that this Court reviews de novo. *Hensley v. West,* __F. 3d__, __, No. 99-7029, slip op. at 15 (Fed. Cir. May 12, 2000) (explaining this Court's de novo review authority*); Grivois v. Brown,* 6 Vet.App. 136, 139 (1994). However, in its recent decision in *Schroeder v. West*, __F.2d__, __, No. 99-7103, slip op. at 10 (Fed. Cir. May 18, 2000), the United States Court of Appeals for the Federal Circuit (CAFC) held that, once a veteran has established a well-grounded claim for a current disability due to a service-incurred disability, the Secretary has a duty to assist pursuant to section 5107(a) of title 38, United States Code. The Secretary's duty includes the "investigation of <u>all</u> possible in-service causes of that current disability,

5

including those unknown to the veteran." *Schroeder*, __F.2d at __, slip op. at 10.

In this case, the appellant seeks service connection for the cause of the veteran's death. She argues that the medication taken by the veteran for his service-connected disabilities contributed to the deterioration of his health. Appellant's Brief at 19-20. While the appellant's argument, standing alone, is not sufficient to well ground her claim due to a lack of supportive evidence, the Board, in its decision here on appeal, determined that the appellant's claim for DIC *is* well grounded pursuant to section 5107(a). The Court agrees. Since her section 1310 claim and medication theory are based upon the same disability (the veteran's death), the appellant was entitled to VA assistance in developing *all* theories related to the cause of the veteran's death. *Schroeder, supra.* Therefore, remand of the matter is necessary for further development and adjudication of the appellant's medication theory.

In her brief, the appellant argues that, because the medical treatise evidence "demonstrates a plausible relationship between her husband's death from a liver cancer and his military service," her claim should be given the benefit of the doubt, "as required by law." Appellant's Br. at 21. However, the benefit of the doubt doctrine is only applicable after the appellant has met the initial burden of submitting a well-grounded claim. *Gilbert*, 1 Vet.App. at 55. Once this initial burden is met, the Secretary has a duty to assist in developing facts pertinent to the claim. *Murphy v. Derwinski*, 1 Vet.App. 78, 81-82 (1990). It is only after all of the evidence is assembled that the Secretary is able to make a determination as to whether the evidence is in equipoise. *Gilbert, supra.* Since application of the CAFC's decision in *Schroeder* serves to well ground the appellant's medication theory, upon remand, the Secretary will gather relevant evidence pursuant to his statutory duty to assist and the Board will determine whether, at that point, the evidence of record is in equipoise. *Id.* If so, the benefit-of-the-doubt doctrine must be applied and the Board must find in the appellant's favor. Upon readjudication, the Board is directed to review the medical treatise evidence submitted by the appellant, and, if appropriate, seek an independent medical opinion as to whether a causal link exists between medications taken by the veteran and his death.

## III. CONCLUSION

After consideration of the appellant's briefs, the Secretary's brief and response, and a review of the record, the Court holds that the appellant has not demonstrated that the Board committed either legal or factual error which would warrant reversal or remand with respect to the veteran's sections 1310 and 1318(b) claims. The Court is also satisfied that, as to those claims, the Board decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra*. With respect to the appellant's claim under 38 U.S.C. § 1318(b), the appeal is DISMISSED for lack of jurisdiction. As for the appellant's theory that the veteran's medications caused his death, remand of the matter is necessary. Therefore, the June 11, 1997, Board decision is AFFIRMED in part and VACATED in part and a matter is REMANDED for reasons consistent with this opinion.