# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1276

MARIA R. RODRIGUEZ, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 27, 2005                        Decided     August 5, 2005 )

*Kathy A. Lieberman*, of Washington, D.C., for the appellant.

*Thomas J. Kniffen*, with whom *Tim McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty,* Deputy Assistant General Counsel; and *Patricia Trujillo*, all of Washington, D.C., were on the brief, for the appellee.

Before STEINBERG, *Chief Judge*,[1] and GREENE and KASOLD, *Judges.*

STEINBERG, *Chief Judge*:  Appellant Maria R. Rodriguez, the surviving spouse of veteran Feliz Estremera-Acevedo, through counsel, seeks review of a June 10, 2003, decision of the Board of Veterans' Appeals (Board or BVA) that denied her claim for dependency and indemnity compensation (DIC) under 38 U.S.C. § 1318.  Both parties filed briefs, and the appellant filed a reply brief.  The issue on appeal is whether a January 2000 amendment to regulation 38 C.F.R. § 3.22 to bar a "hypothetical" entitlement theory for section 1318 DIC claims, which amendment occurred while the appellant's section 1318 DIC claim was pending at the Department of Veterans Affairs (VA), may be applied to her claim so as to preclude adjudication under that theory.  The Court heard oral argument on January 27, 2005.  Pursuant to a bench order, the appellant and the Secretary filed on February 2 and 7, 2005, respectively, supplemental briefs addressing the impact, if any, of *Cole v. Principi*, 13 Vet.App. 268, 278 (1998), on this appeal.  For the reasons set forth below, the Court

---

[1] Jonathan R. Steinberg became Chief Judge of the Court at noon on August 5, 2005.

will reverse in part and vacate in part the June 2003 Board decision and remand the matter for readjudication.

## I. Relevant Background

The veteran, Feliz Estremremera-Acevedo, served honorably on active duty in the U.S. Army from August 1954 to December 1974. Record (R.) at 2, 17-23. He also had Army National Guard service from October 1948 to October 1951. *Ibid.* He died in August 1996 of cardiorespiratory failure resulting from hepatic encephalopathy resulting from liver cancer. R. at 2, 268. At the time of his death, VA service connection was in effect for various conditions, which were rated together as 100% disabling from April 22, 1991. R. at 263. In September 1996, the month after his death, the appellant, as his surviving spouse, filed a claim for DIC. R. at 270-73.

The veteran's service medical records (SMRs) included an October 1974 medical examination report for purposes of retirement that showed a diagnosis of diabetes mellitus and "[e]levated SGOT [(serum glutamic-oxaloacetic transaminase)] – . . . [f]atty infiltration of liver". R. at 116; *see* R. at 120. (Serum glutamic-oxaloacetic transaminase is "frequently elevated in a variety of disorders causing tissue damage (e.g., myocardial infarction)." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 148, 1514 (28th ed. 1994) (defining SGOT with reference to "aspartate transaminase", *id.* at 148).) In January 1975, he apparently filed his first claim for service connection for diabetes, removal of gall bladder, and hemorrhoidectomy. *See* R. at 138, 150, 153-54. (The application for disability compensation benefits is not in the record on appeal. *See* 1-424.) A May 1975 VA medical examination report noted, among other things, an enlarged liver, and the reported diagnosis was diabetes mellitus, fatty infiltration of the liver, postoperative cholecystectomy, and postoperative hemorrhoidectomy. R. at 141. A June 1975 VA regional office (RO) decision granted service connection for the following conditions, effective from January 1, 1975: Diabetes mellitus, rated as 10% disabling; removal of gall bladder, rated as 0% disabling; and hemorrhoidectomy, rated as 0% disabling. R. at 154.

VA medical records showed that the veteran was admitted to a VA facility on April 22, 1991, in connection with a transmetatarsal amputation of his left foot. R. at 164-72. A September 1991 VA metabolic evaluation report contained a diagnosis of the following conditions, in addition to the diabetes mellitus: Diabetic proliferative retinopathy and diabetic peripheral vascular disease, status

post below-the-knee amputation of the left leg. R. at 160. A July 1992 VARO decision increased the veteran's rating to a combined disability rating of 100%, effective from April 22, 1991, for the following conditions: Diabetes mellitus, type II; diabetic proliferative retinopathy; diabetic peripheral vascular disease, status post below-the-knee amputation of the left leg; arterial hypertension. R. at 178. The RO also awarded special monthly compensation on account of the anatomical loss of one foot, effective from May 7, 1991. *Ibid*. The RO deferred, pending receipt of additional VA records and receipt of information from the veteran, consideration of (1) an increased rating for service-connected residuals of the gallbladder and hemorrhoids conditions, (2) an earlier effective date for the 100% disability rating assigned to the service-connected diabetes condition, and (3) service connection for post-traumatic stress disorder (PTSD). R. at 179.

In October 1992, the RO received VA medical records for the period covering July 1989 to September 1992, which included records showing treatment in August 1989 for cellulitis of the right foot, among other things. R. at 181- 251. A February 1993 VA mental-disorders examination report included a diagnosis of dysthymia, secondary to below-the-knee amputation. R. at 254, 259. On May 12, 1993, the RO denied the three deferred claims noted above and granted service connection for dysthymia, rated as 30% disabling, effective from February 9, 1993. R. at 261-64.

The veteran died on August 27, 1996, as a result of cardiorespiratory failure, which was due to hepatic encephalopathy and liver carcinoma. R. at 268. After the appellant filed her DIC claim in September 1996 (R. at 270-73), the RO received additional VA medical records (R. at 276-333); those records noted, among other things, that the veteran was admitted to a VA facility on August 6, 1996, for treatment of leg edema and abdominal distention and that during subsequent examinations a diagnosis of multicentric hepatoma was made. R. at 326. He remained at the VA facility until his death, and during part of such time he was transferred to a hospice unit because of his terminal condition.

In November 1996, the RO denied the appellant's claim for service connection for the cause of the veteran's death under 38 U.S.C. § 1310 and denied DIC under 38 U.S.C. § 1318. R. at 335-39. Regarding the service-connection claim for the cause of the veteran's death, the RO found that there was no evidence linking the veteran's death to service. R. at 337. The RO noted that SMRs were silent as to complaints or treatment for any liver condition, that the veteran's service-connected

3

condition did not contribute to his death, and that, although his diabetes mellitus was rated as 100% disabling, the liver carcinoma "was overwhelming and was the unique cause of his death". R. at 337. Regarding section 1318 DIC benefits, the RO found that neither of the statutory requirements had been met in that the veteran had not been rated totally disabled either for a period of at least ten years immediately prior to his death or for a period of at least five years from the date of discharge from service until his death. R. at 338. The appellant filed a timely appeal to the Board as to both claims. R. at 341, 359-62.

A July 1998 BVA decision remanded the appellant's claims for additional development and readjudication. R. at 372-77. An October 2002 Supplemental Statement of the Case (SSOC) noted the completion of the actions directed in the remand order and denied the appellant's claim for service connection for the cause of the veteran's death based on a July 2002 VA medical opinion (R. at 383) that established no connection between the veteran's death and his service-connected disabilities. R. at 393-94. In addition, the RO again denied the section 1318 DIC claim because the veteran had not been rated totally disabled for the statutory ten-year period immediately prior to his death. R. at 394.

A December 30, 2002, Board decision denied the appellant's claim for service connection for the cause of the veteran's death; the Board found that "[n]o service-connected disability was a principal or contributory cause of the veteran's death." R. at 405-17. This decision was not appealed to the Court. The Board deferred consideration of the section 1318 DIC claim pending the completion of litigation in the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) involving that provision and pursuant to a stay ordered by the Federal Circuit in *National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs (NOVA v. Sec'y)*, 260 F.3d 1365 (Fed. Cir. 2001) (*NOVA I*). R. at 406. In *NOVA I*, the Federal Circuit concluded that section 1318 was ambiguous and, in order to allow the Secretary to undertake rulemaking to harmonize § 3.22 and 38 C.F.R. § 20.1106 on the "hypothetical entitlement" issue, deferred a decision on the validity of an amendment that VA had adopted in 2000 (38 C.F.R. § 3.22 (2000)) to 38 C.F.R. § 3.22 (1999), the regulation promulgated pursuant to section 1318. *Ibid*.

In the June 2003 BVA decision here on appeal, the Board, after noting that the stay on the consideration of the DIC claim had been lifted, determined that the October 2002 SSOC had

4

informed the appellant of the information and evidence necessary to substantiate her section 1318 DIC claim and that the Secretary's obligations under the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, § 3(a), 114 Stat. 2096, 2096-97, and its implementing regulation were thus satisfied. R. at 2- 4. The Board also determined that the appellant's section 1318 DIC eligibility had not been established. R. at 8-13. The Board found that the veteran was not a "deceased veteran" for purposes of applying section 1318 because he had no service-connected disabilities rated as 100% disabling for at least the 10 years immediately preceding his death. R. at 11. The Board noted that the veteran first received a combined rating of 100% on April 22, 1991, and that at the time of his death in August 1996 the 100% rating had been in effect for just over five years. *Ibid*. The Board also made the following determination:

> To the extent that the appellant argues that the veteran had a service-connected disability that would have been evaluated as 100[%] disabling, or a totally disabling condition that would have been established as service connected, for at least 10 years before his death if a claim had been filed, such an allegation is tantamount to a "hypothetical claim" for entitlement, which is excluded from consideration.

R. at 12 (citing *NOVA v. Sec'y*, 314 F.3d 1373, 1379-80 (Fed. Cir. 2003) (*NOVA II*)).

The Board also noted that although much of the evolution of analysis for section 1318 DIC claims occurred after receipt of the appellant's claim by VA in September 1996, the general rule espoused in *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), which stated that where a law or regulation changes after a claim has been filed but before the administrative or judicial appeal process has been concluded, the version more favorable to an appellant will apply, is not applicable here. R. at 12. The Board reasoned that "to the extent that there has been any change in the law or regulations relevant to the claim, the changes are not of the material type that altered the appellant's rights, but rather clarified those rights." R. at 13. In support of its conclusion, the Board noted (1) that the Federal Circuit in *NOVA I*, 260 F.3d at 1376-77, had concluded that VA's actions in amending § 3.22 to bar hypothetical claims for entitlement to DIC was interpretative, rather than substantive, in nature – that is, that the amendments to § 3.22 clarified VA's earlier interpretation of the statute, which was to bar "hypothetical entitlement" claims (R. at 12), and (2) that the Federal Circuit in *NOVA I*, 260 F.3d at 1374, had concluded that VA was not bound by the prior Court

5

decisions, such as *Green (Doris) v. Brown*, 10 Vet.App. 111, 118 (1997), and *Cole*, *supra*, that had construed section 1318 and § 3.22 "in a way antithetical to the agency's interpretation and was free to challenge them, to include through the route of rulemaking" (R at 13).

## II.  Analysis

### *A.  Parties' Contentions*

On appeal, the appellant argues that the Board erred by retroactively applying to her 1996 DIC claim an amended version of § 3.22, which amendment occurred in 2000 while her claim was pending at VA and which amendment extinguished a right that she previously had pursuant to this Court's 1997 opinion in *Green*, *supra*.  Appellant (App.) Brief (Br.) at 6-9.  Alternatively, she argues that the Board decision should be vacated and the matter remanded for the Board to determine in the first instance which version of the regulation is more favorable to her under *Karnas*, *supra*.  App. Br. at 9-10.

The Secretary counters that the Board decision should be affirmed because the statutory requirements for section 1318 were not met in that the veteran's disabilities were not rated totally disabling for a period of at least 10 years immediately preceding his death.  Secretary (Sec'y) Br. at 5.  He argues that because the Federal Circuit in *NOVA I* found section 1318 ambiguous and further found that VA issued in 2000 an interpretative rule that merely clarified the agency's interpretation of the statute in the existing regulation such that there was no substantive change in the law, there was no impermissible retroactive effect under *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), in applying the 2000 version of § 3.22.  Br. at 13.  The Secretary argues that no right was extinguished by applying the 2000 version of § 3.22 because at the time of the filing of the DIC claim in September 1996, VA did not recognize "hypothetical entitlement" under section 1318 or the former version of § 3.22 (Br. at 7-8 (citing to VA Gen. Coun. Prec. 68-90 (July 18, 1990) [hereinafter G.C. Prec. 68-90]).  (The Court notes that the Secretary inadvertently cited to G.C. Prec. 69-90.)  He argues that "hypothetical entitlement" was a Court-created concept first announced in *Green* and that he had continued litigating in support of his position in opposition to the interpretation adopted in *Green*.  Br. at 11.  In addition, the Secretary argues that even if *Kuzma v. Principi*, 341 F.3d 1327 (Fed. Cir. 2003), did not overrule *Karnas*, *Karnas* is not applicable here

6

because the 2000 amendment to § 3.22 was not a change in law but merely a clarification in the applicable law, and there is thus no "more favorable law" to apply under *Karnas* in this case. Br. at 5, 14-19.

In reply, the appellant argues that courts have recognized that a change in interpretation brought about by an interpretative rule may have consequences for the rights of the parties. Reply Br. at 2 (citing *NOVA I*, 260 F.3d at 1376). She argues that while her claim was in appellate status within VA, she was entitled to establish a theory of hypothetical entitlement pursuant to *Green*, and that, therefore, when this Court interpreted section 1318 and § 3.22 as allowing for hypothetical entitlement to DIC, that interpretation became the law applicable to the appellant's DIC claim then pending before VA. Reply Br. at 2-3. She argues that by the time that the Board had adjudicated her claim in 2003, regulation § 3.22 had been amended and hypothetical entitlement was no longer available. She argues that "there can be no change in law more substantive than the extinguishment of her rights" and that, consistent with *Landgraf*, *supra*, the 2000 amendment to § 3.22 should not be applied retroactively to her claim. Reply Br. at 3. Finally, she maintains that *Kuzma*, *supra*, overruled *Karnas* only to the extent that it conflicts with the U.S. Supreme Court's and the Federal Circuit's binding authority, and that *Kuzma* is inapplicable to this case because she is not requesting retroactive application of the amended regulation but is requesting that the new 2000 version of § 3.22 ***not*** be applied retroactively and that there is thus no inconsistency. Reply Br. at 5-6.

In the appellant's supplemental brief filed in response to the Court's January 27, 2005, bench order, the appellant argues that the specificity requirement for pleading a "hypothetically . . . entitled to receive" section 1318 claim that was set forth in *Cole*, *supra*, cannot be imposed on her claim on appeal here because VA failed to notify her, pursuant to 38 U.S.C. § 5103(a), of the evidence necessary to substantiate a hypothetical section 1318 DIC claim. App. Supplemental (Suppl.) Br. at 4-6. The Secretary responds that section 5103(a) does not require him to advise her of the *Cole* specific-pleading requirement and that if there was any such error in providing notice, the appellant has not met what he contends is her burden of showing prejudicial error. Sec'y Suppl. Br. at 3-7. He maintains that the record in this case does not show entitlement to a 100% disability rating for the 10 years immediately prior to the veteran's death. *Id.* at 4-5.

On March 17, 2005, pursuant to Rule 30(b) of the Court's Rules of Practice and Procedure, the appellant filed a notice of supplemental authority, citing *Durr v. Nicholson*, 400 F.3d 1375 (Fed. Cir. 2005) (discussing whether application of Court rule had impermissible retroactive effect).

### B. Applicable Law and Regulation

Section 1318 provides in pertinent part:

(a) The Secretary shall pay benefits under this chapter . . . to the surviving spouse . . . of a deceased veteran described in subsection (b) of this section in the same manner as if the veteran's death were service connected.

(b) A deceased veteran . . . is a veteran who dies, not as the result of the veteran's own willful misconduct, and who was in receipt of **or entitled to receive** . . . compensation at the time of death for a service-connection disability rated totally disabling if -

(1) the disability was continuously rated totally disabling for a period of 10 or more years immediately preceding death . . . .

38 U.S.C. § 1318 (emphasis added). The pertinent parts of section 1318 quoted above were essentially the same as those at the time of the veteran's death and the filing of the appellant's DIC claim in 1996. *See* Pub. L. 106-117, § 501(b), 113 Stat. 1545, 1573-74 (Nov. 30, 1999) (amending paragraph (b) by, inter alia, substituting "rated totally disabling if – " for "that neither" in § 501(b)(1), and amending paragraph (b)(1) by inserting "the disability" following "(1)").

At the time that the appellant filed her DIC claim in 1996, the VA implementing regulation for section 1318 provided, in pertinent part at § 3.22:

(a) *Entitlement criteria*. Benefits authorized by section 1318 of title 38 U.S.C., shall be paid to a deceased veteran's surviving spouse . . . in the same manner as if the veteran's death is service-connected when the following conditions are met:

(1) The veteran's death was not caused by his or her own willful misconduct; and

(2) The veteran was in receipt of or **for any reason** (including receipt of military retired or retirement pay or correction of a rating after the veteran's death based on clear and unmistakable error) was not in receipt of **but would have been entitled to receive** compensation at the time of death for a service-connected disablement that either:

(i) Was continuously rated totally disabling by a schedular or unemployability rating for a period of 10 or more years immediately preceding death . . . .

38 C.F.R. § 3.22(a)(1), (a)(2)(i) (1995) (boldface-italic emphasis added).

In January 2000, the Secretary amended § 3.22 to read, in pertinent part:

(a) Even though a veteran died of non-service-connected causes, VA will pay death benefits to the surviving spouse or children in the same manner as if the veteran were service-connected, if:
(1) The veteran's death was not the result of his or her own willful misconduct, and
(2) At the time of death, the veteran was receiving, or was entitled to receive, compensation for service-connected disability that was:
(i) Rated by VA as totally disabling for a continuous period of at least 10 years immediately preceding death;
. . . .

(b) For purposes of this section, "entitled to receive" means that at the time of death, the veteran had service-connected disability rated totally disabling by VA but was not receiving compensation because:
(1) VA was paying the compensation to the veteran's dependents;
(2) VA was withholding the compensation under authority of 38 U.S.C. § 5314 to offset an indebtedness of the veteran;
(3) The veteran had applied for compensation but had not received total disability compensation due solely to clear and unmistakable error [(CUE)] in a VA decision concerning the issue of service connection, disability evaluation, or effective date;
(4) The veteran had not waived retired or retirement pay in order to receive compensation;
(5) VA was withholding payments under the provisions of 10 U.S.C. § 1174(h)(2);
(6) VA was withholding payments because the veteran's whereabouts was unknown, but the veteran was otherwise entitled to continued payments based on a total service-connected disability rating; or
(7) VA was withholding payments under 38 U.S.C. § 5308 but determines that benefits were payable under 38 U.S.C. § 5309.

65 Fed. Reg. 3388, 3391 (2000) (to be codified at 38 C.F.R. § 3.22 (2000)). (The current version of § 3.22, 38 C.F.R. § 3.22 (2004), also contains the above pertinent portion that is quoted from the 2000 version.)

In addition, at the time that the appellant filed her DIC claim in 1996, 38 C.F.R. § 20.1106 provided as follows:

> Except with respect to benefits under the provisions of 38 U.S.C. § 1318 and certain cases involving individuals whose [VA] benefits have been forfeited for treason or for subversive activities under the provisions of 38 U.S.C. [§] 6104 and 6105, issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime.

38 C.F.R. § 20.1106 (1995).

### C.  Appellant's Section 1318 DIC Claim

### 1.  Statutory and Regulatory History

Pursuant to 38 U.S.C. § 1318(b)(1), the surviving spouse of a veteran who dies from an injury or disease that is not service connected is entitled to DIC benefits in the same manner as if the veteran's death was service connected, if the veteran "was in receipt of *or entitled to receive* . . . compensation at the time of death for a service-connection disability rated totally disabling if . . . the disability was continuously rated totally disabling for a period of 10 or more years immediately preceding death".  38 U.S.C. § 1318(b)(1) (emphasis added); *see* 38 C.F.R. § 3.22; *see also Damrel v. Brown*, 6 Vet.App. 242, 245 (1994).

In February 1997, approximately three months after the RO had denied the appellant's section 1318 DIC claim but while that claim was still pending at VA, this Court issued its opinion in *Green*, *supra*, interpreting the "entitled to receive" language of section 1318(b) and the former § 3.22(a)(2) that was then in effect.  In *Green*, this Court concluded that the 1982 addition of that language to section 1318(b) created a new basis or theory for a section 1318 DIC claim by giving to a veteran's surviving spouse "the right to attempt to demonstrate that the veteran hypothetically would have been entitled to receive a different decision on a service-connection-related issue . . . based on evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable."  *Green*, 10 Vet.App. at 111; *see Carpenter (Angeline) v. West*, 11 Vet.App. 140, 147 (1998) (reaffirming *Green*).  Shortly thereafter, this Court in *Wingo v. West* vacated a Board decision to deny a section 1318 DIC claim and remanded that matter for a determination under the "hypothetically . . . entitled to receive" theory where the veteran was rated 100% service-connected disabled by a service department for more than 10 years before

10

his death but the veteran had filed a claim with VA only a few months before his death and had not received any VA adjudication on his claim at the time of his death. *Wingo*, 11 Vet.App. 307, 309-12 (1998).

Subsequently, this Court in *Cole v. West*, described three theories, pursuant to section 1318(b), based on which the surviving spouse of a veteran who dies from an injury or disease that is *not* service connected may receive DIC:

> [U]nder the umbrella of a general section 1318 DIC claim, a VA claimant may receive section 1318 DIC under any one of the three following theories: (1) If the veteran was in actual receipt of compensation at a total disability rating for 10 consecutive years preceding death, *see* 38 U.S.C. § 1318(b)(1); (2) if the veteran would have been entitled to receive such compensation but for CUE in previous final RO decisions and certain previous final BVA decisions . . . ; or (3) if, on consideration of the "evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable", the veteran *hypothetically would have been entitled to receive* a total disability rating for a period or periods of time, when added to any period during which the veteran actually held such a rating, that would provide such a rating for at least the 10 years immediately preceding the veteran's death, *see Carpenter*[], *supra*; *Green*, 10 Vet.App. at 118.

*Cole*, 13 Vet.App. 268, 274 (1999) (emphasis added); *see Marso v. West*, 13 Vet.App. 260, 264-67 (1999); *see also* 38 C.F.R. § 3.22(a) (1999). Theories (1) and (2) in the above quotation are not at issue in the instant case; at issue here is theory (3), the "hypothetically . . . entitled to receive" theory.

In *Hix v. Gober*, this Court interpreted 38 U.S.C. § 1311(a)(2), which provides for an increased (enhanced) DIC benefit for the surviving spouse of a veteran whose death was caused by a service-connected disability if the veteran was, for eight continuous years up until the time of death, "in receipt of or was entitled to receive" a total disability rating. *Hix*, 12 Vet.App. 138, 140 (1999) (*Hix I*), *aff'd*, *Hix v. Gober*, 225 F.3d 1377 (2000) (consolidated with *Pardue v. Gober*, No. 99-7102) (*Hix II*); *see* 38 U.S.C. § 1310 (authorizing DIC benefits when veteran dies from service-connected disability). The Court determined that the "entitled to receive" language of section 1311(a)(2) was the same as the language in section 1318(b), reasoned that both sections are in chapter 13 and deal with DIC, and held that the phrase must have the same meaning in both sections. *Id*. at 141. Applying the "well settled" caselaw of *Wingo*, *Carpenter*, and *Green*, all *supra*, the Court held that a claimant pursuing enhanced DIC benefits under section 1311(a)(2) has the right to obtain

a determination as to whether the deceased veteran hypothetically was entitled to benefits sufficient to warrant enhanced DIC for the surviving spouse. *Hix I*, 12 Vet.App. at 141. The Secretary appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), which in *Hix II*, *supra*, affirmed this Court's decision in *Hix I*.

The Federal Circuit noted that the requirements of 38 C.F.R. § 20.1106, which provides in pertinent part that "[e]xcept with respect to benefits under the provisions of 38 U.S.C. § 1318 . . . , issues involved in a survivor's claim for [DIC] benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime", were "dispositive of the interpretation of 38 U.S.C. § 1311." *Hix II*, 225 F.3d at 1380. The court accordingly held that section 1311 required "*de novo* determination of the veteran's disability, upon the entirety of the record including any new evidence presented by the surviving spouse." *Id*. at 1380-81. The court concluded that this Court had correctly remanded to VA "for appropriate proceedings in implementation of its decision" – that is, the adjudication of the DIC claim by the Board on the "hypothetically . . . entitled to receive" theory. *Id*. at 1381. Because VA's own regulation at § 20.1106 was in conflict with the agency's position, the court rejected the Secretary's argument there that VA's ***statutory*** interpretation of section 1311(a)(2), which was that the Board will not retroactively reassess disability unless CUE has been shown in a prior disability rating, was entitled to deference. *Hix II*, 225 F.3d at 1380.

In response to this Court's decisions that had established and reaffirmed the "hypothetically . . . entitled to receive" theory for section 1318 DIC claims (and while the instant appellant's section 1318 DIC claim remained pending at VA awaiting further development by the RO pursuant to the July 1998 BVA remand), VA promulgated a final rule in January 2000 that amended 38 C.F.R. § 3.22 basically to restrict DIC benefits to cases where the veteran, during his or her lifetime, had established a right to receive total service-connected disability compensation from VA for the period of time required by section 1318, or would have established such right but for CUE in the adjudication of a claim or claims. *See* 65 Fed. Reg. 3388 (Jan. 21, 2000). This amendment to § 3.22(a) defined the statutory term "entitled to receive" so as to exclude the "hypothetically . . . entitled to receive" – section 1318(b) – DIC basis recognized in *Wingo*, *Green*, and *Carpenter*, all *supra*; *see also Cole* and *Marso*, both *supra*. The amended regulation refers "to each specific circumstance where a veteran could have had a service-connected disability rated totally disabling

12

by VA but may not have been receiving VA compensation for such disability at the time of death." 65 Fed. Reg. at 3390-91.

In the explanation accompanying the final rule, VA made clear that it had amended 38 C.F.R. § 3.22 to respond to this Court's decisions in *Green* and its progeny. 65 Fed. Reg. at 3388 (Supplementary Information); *see NOVA I*, 260 F.3d at 1372. The VA Supplementary Information explained that this Court's interpretation of § 3.22(a) in *Wingo*, *supra*, "does not accurately reflect VA's intent in issuing that regulation" and that it "is revising § 3.22(a) to ensure that it clearly expresses VA's interpretation of section 1318." 65 Fed. Reg. at 3388. The VA Supplementary Information stated: "VA has concluded that the phrase 'entitled to receive . . . compensation' [in section 1318] is most reasonably interpreted as referring to cases where the veteran had established a legal right to receive compensation for the required period under the laws and regulations governing such entitlement, but was not actually receiving the compensation." *Id.* at 3389. In that Supplementary Information, VA concluded that the legislative history indicated that the purpose of adding the phrase "or entitled to receive" to what is now section 1318(b) was "to provide that DIC may be paid in cases where the veteran would have been in receipt of compensation for a total service-connected disability for the specified period prior to death if not for a [CUE] by VA" and that this stated purpose fits logically within the well-established statutory scheme governing claim-filing requirements, effective date of entitlement, and the finality of RO and Board decisions. *Ibid*. The Secretary promulgated this final rule without a notice-and-comment period based on his determination that this final rule was interpretative rather than substantive in nature. *Id.* at 3391.

The validity of amended § 3.22 was challenged in the Federal Circuit in *NOVA I, supra*. In that case, the Federal Circuit found that the amendment constituted an interpretive rule that did no more than interpret the requirements of 38 U.S.C. § 1318(b) and clarified VA's earlier interpretation of the statute. *NOVA I*, 260 F.3d at 1376-77. Upon consideration of section 1318(b), the Federal Circuit found that the statutory language was ambiguous as to whether a "hypothetical" claim was allowed. *Ibid*. The Federal Circuit stated that the "entitled to receive" phrase of section 1318(b) provided no guidance as to whether a hypothetical claim of total disability was allowed. *Ibid*. The court noted the conflict between this Court's interpretation and VA's more restrictive interpretation. *Id*. at 1377-1378. The Federal Circuit did not, however, decide whether VA's interpretation of

13

section 1318(b) in the amended regulation § 3.22 was entitled to deference because it determined that the amended § 3.22 must be remanded to VA because the amended § 3.22 was inconsistent with the agency's interpretation in § 20.1106 of section 1311, which has virtually identical language – "entitled to receive" – as section 1318(b) and that those two sections (1311(a)(2) and1318(b)) served the same purpose, namely, the award of DIC benefits to survivors. *NOVA I*, 260 F.3d at 1379.

The Federal Circuit directed the Secretary either (1) to provide a reasonable explanation for its decision to interpret the phrase "entitled to receive" in sections 1311(a)(2) and 1318(b) in inconsistent ways; or (2) to revise § 3.22 "to harmonize that regulation with this court's interpretation of 38 C.F.R. § 20.1106" in *Hix II*; or (3) to revise § 20.1106 to be consistent with the amended version of § 3.22. *NOVA I*, 260 F.3d at 1380-81. Although the court did not invalidate the amended § 3.22 regulation, the court directed the Secretary to stay all proceedings involving section 1318 DIC claims, whose outcome is dependent on the regulation in question, pending the conclusion of expedited rulemaking. *NOVA I*, 260 F.3d at 1380.[2] In response to *NOVA I*, the Secretary determined that the two governing statutory provisions, sections 1311(a)(2) and 1318(b), should be interpreted consistently and attempted to harmonize his regulations by modifying § 20.1106 to require that adjudications of DIC claims under section 1311(a)(2) and DIC claims under section 1318(b) be subject to any prior adjudications of the veteran's claims. *See* 67 Fed. Reg. 16,309, 16,317 (2002); *Hatch v. Principi*, 18 Vet.App. 527, 531 (2004).

The validity of amended regulation § 20.1106 was challenged in the Federal Circuit in *NOVA II*. In January 2003, the Federal Circuit held, upon review of § 20.1106, as amended, that the Secretary had failed in his obligation under *NOVA I* to harmonize the regulations under sections 1311(a)(2) and 1318(b), and the Federal Circuit "vacate[d]" the amended § 20.1106 and remanded for further rulemaking. *NOVA II*, 314 F.3d at 1381. The court noted that the Secretary did not amend either § 20.1106 or § 3.5 (the implementing regulation for section 1311) to make them consistent with the section 1318 regulation (§ 3.22) (i.e., neither § 20.1106 nor § 3.5 spell out the exceptions contained in amended § 3.22). *NOVA II*, 314 F.3d at 1381. Regarding the question of

_____

[2] The parties on appeal to the Court have not raised any issue as to whether the proceedings in this case remain subject to any stay. In any event, because, as discussed below, the Court concludes that the pre-2000 version of 38 C.F.R. § 3.22 applies to the instant case, this case need not be stayed pending any further Department of Veterans Affairs action with respect to its regulations.

14

continuing a stay of proceedings in certain cases, the court decided to "stay the further processing of claims under sections 1311(a)(2) and 1318 where the survivor seeks to reopen a claim on grounds of new and material evidence, since the permissibility and reasonableness of interpreting the statutes to bar such claims remains to be determined." *NOVA II*, 314 F.3d at 1382.[3]

## *2. Application to Instant Case*

The instant case requires us to decide whether amended § 3.22 may be applied to claims that were pending at VA when that amended regulation went into effect. Specifically, we must determine whether amended § 3.22 applies to the appellant's section 1318 DIC claim. The answer to this question will determine whether the appellant may pursue her "hypothetically . . . entitled to receive" theory in this case.

The first issue is whether there was a substantive right taken away or narrowed by amended § 3.22. A regulation is deemed to have retroactive effect when it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. The appellant filed her claim in September 1996, and this Court's 1997 decision in *Green* was in effect prior to the Board's initial adjudication of her claim in July 1998. Any doubt about the binding nature of the Court's interpretation of section 1318 in *Green* (because the outcome there was an affirmance rather than a remand for application of that theory) was removed in March 1998 by *Carpenter*, where the Court reaffirmed the Court's interpretation of section 1318 in *Green* and remanded the matter. *Carpenter*, 11 Vet.App. at 145-47. The Court's interpretation in *Green* and *Carpenter*, both *supra*, of the "entitled to receive" language in section 1318(b) as allowing for a "hypothetically . . . entitled to receive" theory established the existence of a substantive right because that interpretation recognized a group of claimants eligible for section 1318 DIC and that group was larger than the group VA had recognized. Prior to the Board's 1998 initial adjudication of the appellant's claim (and at least up until the time of the 2000 revision to § 3.22), this Court's interpretation of section 1318(b) as allowing that theory was binding on VA in the adjudication of section 1318 DIC claims. *See Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991) (holding that "decision of this Court, unless or until

---

[3] *See supra* note 2.

15

overturned by this Court *en banc*, the . . . Federal Circuit, or the Supreme Court, is a decision of the Court on the date it is issued; any rulings, interpretations, or conclusions of law contained in such a decision are authoritative and binding as of the date the decision is issued and are to be considered and, when applicable, are to be followed by VA agencies of original jurisdiction, the [Board], and the Secretary in adjudicating and resolving claims"); *see also NOVA I*, 260 F.3d at 1374 n.8 (noting that it is "clear that an agency is bound to follow higher authority . . . when it acts as an adjudicator"). VA then amended its regulations on January 21, 2000, to eliminate that theory. Thereafter, the 2003 Board decision on appeal applied the amended § 3.22 to the appellant's section 1318 DIC claim and denied section 1318 benefits because a "hypothetical" theory is "excluded from consideration". R. at 12.

In view of the foregoing, the Court holds that the "hypothetically . . . entitled to receive" theory constituted a substantive right at the time that the appellant's claim was pending before VA in that *Green/Carpenter/Wingo* were in effect on the day before the new regulation was promulgated and were binding on VA *in its adjudication process*. *See NOVA I*, 260 F.3d at 1374 n.8. To apply amended § 3.22 to the appellant's claim would thus take away a substantive right that existed at the time that the regulation was promulgated. Accordingly, because amended § 3.22 took away a substantive right of the appellant, VA's application of amended § 3.22 to the appellant's case had a "retroactive effect". *See Landgraf*, *supra*. Although the Secretary has attempted to suggest that the Federal Circuit has cast some doubt on the "hypothetically . . . entitled to receive" theory, we do not agree. That court in *Hix II* applied the companion statutory language ("entitled to receive") in section 1311 so as to allow the adjudication of enhanced DIC claims by the Board on a hypothetical basis. Thereafter, in *NOVA II*, the Federal Circuit implicitly affirmed its holding in *Hix II*. *NOVA II*, 314 F.3d 1373, 1378 (Fed. Cir. 2003); *see also Hatch*, 18 Vet.App. at 531 (applying *Hix II* and concluding that claim for enhanced DIC under section 1311(a)(2) must be adjudicated de novo, without consideration of effective date of veteran's prior grant of service connection for PTSD or date of original claim therefor). We turn next to the question of VA's authority to prescribe a regulation that had such retroactive effect (i.e., by applying to a pending claim the regulation taking away such a substantive right).

16

"Absent clearly expressed intent to the contrary, statutes and regulations are presumed not to have retroactive effect." *Durr*, 400 F.3d at 1380 (citing *INS v. St. Cyr*, 533 U.S. 289, 316 (2001)). The Federal Circuit in *Kuzma*, in upholding its prior decisions that section 3(a) of the VCAA, which made no mention of retroactivity, was not retroactively applicable to VA proceedings that were "complete" before VA (i.e., for which there was a final Board decision) and were on appeal on the date of the VCAA's enactment (November 9, 2000), reasoned that "'[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result'". *Kuzma*, 341 F.3d at 1328 (quoting *Landgraf*, 511 U.S. at 272 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)) and upholding *Dyment v. Principi*, 287 F.3d 1377 (Fed. Cir. 2002), and *Bernklau v. Principi*, 291 F.3d 795 (Fed. Cir. 2002)); *see also Hayslip v. Principi*, 364 F.3d 1321, 1326-27 (Fed. Cir. 2004) (concluding that Board decision is "final" pursuant to 38 U.S.C. § 7103(a) even though 120-judicial appeal period had not expired; holding that notice provisions of VCAA were not retroactively applicable to VA proceeding in which final Board decision had been issued). Amended § 3.22, unlike the August 29, 2001, VA regulation, 38 C.F.R. § 3.159, that implemented the notice and duty-to-assist provisions of the VCAA, which specifically stated that it was retroactively applicable to cases pending at VA on or after November 9, 2000, *see Pelegrini v. Principi*, 18 Vet.App. 112, 119 (2004), did not address whether the amended regulation was to be applicable to cases pending at VA; the Supplementary Information stated only "*Effective Date*: January 21, 2000". 65 Fed. Reg. 3388 (Jan. 21, 2000).

As the U.S. Court of Appeals for the Sixth Circuit in *Combs v. Commissioner of Social Security*, recently explained:

> Where an administrative agency purports to promulgate a rule with retroactive effect, the reviewing court must determine whether such "power is conveyed by Congress in express terms." *Bowen*[, *supra*]. We have previously noted that "[a]gency rules typically will not apply retroactively in the absence of an express statutory authorization of retroactive rulemaking." *Orr v. Hawk*, 156 F.3d 651, 653 (6th Cir. 1998); *see also Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999) ("[A] rule changing the law is retroactively applied to events prior to its promulgation only if, at the very least, Congress expressly authorized retroactive rulemaking and the agency clearly intended that the rule have retroactive effect.").

*Combs*, 400 F.3d 353, 357-58 (6th Cir. 2005).

VA's general rulemaking authority is found in 38 U.S.C. § 501.  That section provides in pertinent part:

> (a)  The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including –
> > (1) regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws;
> > (2) the forms of application by claimants under such laws;
> > (3) the methods of making investigations and medical examinations; and
> > (4) the manner and form of adjudications and awards.

38 U.S.C. § 501(a).  Section 501 does not provide the Secretary of Veterans Affairs with express authority to promulgate a retroactive regulation.  Indeed, the Secretary himself has stated that he lacks general authority to make a regulation, at least a restrictive one, retroactively applicable.  In August 2001, in promulgating a new, more stringent definition of new and material evidence in 38 C.F.R. § 3.156(a), the Secretary stated in explaining why he had made the amended regulation applicable only to *new* claims to reopen:  "Because we have no authority to make these provisions retroactively effective, they are applicable on the date of this final rule's publication.  Accordingly, we will apply . . . the amendment to 38 C[.]F[.]R[. §] 3.156(a)[] to any claim for benefits received by VA on or after August 29, 2001."  66 Fed. Reg. 45,620, 45,629 (Aug. 29, 2001).

Moreover, the VA General Counsel has concluded in a precedent opinion that "VA has authority to provide for the retroactive application of its procedural regulations to the extent [that] doing so will *benefit rather than burden* claimants."   VA Gen. Coun. Prec. 7-2003, at para. 24 (Nov. 19, 2003) (emphasis added).  In that regard, the General Counsel also noted: "Most statutes and regulations liberalizing the criteria for entitlement to a benefit may be applied to pending claims because they would affect only prospective relief.  Statutes or regulations *restricting* the right to a benefit may have disfavored retroactive effects to the extent [that] their application to a pending claim would extinguish the claimant's right to benefits for periods before the statute or regulation took effect."  *Id.* at para. C.  In concluding that "VA has authority to apply its regulations implementing the VCAA to claims filed before the date of enactment of the VCAA and still pending before VA as of that date", the General Counsel reasoned that VA has authority to provide for the

18

retroactive application of its procedural regulations where (1) such regulations are beneficial to claimants; (2) such regulations are not inconsistent with governing statutes; and (3) VA has expressly provided for their retroactive application. *Id.* at para. E. We note that we do not deal here with VA's authority to apply retroactively a rule that ***benefits*** claimants.

In the instant case, not only would application of amended § 3.22 to the appellant's then-pending claim before VA extinguish her right to seek benefits for periods before the regulation took effect, but also there is no evidence that VA expressly sought to make amended § 3.22 retroactively applicable to cases pending at VA.

Regarding the question of authority to issue a retroactively applicable regulation (or to apply a regulation retroactively), the Sixth Circuit held in *Combs* that "nothing in the Social Security Act [(SSA)] grants the Commissioner the authority to engage in retroactive rulemaking." *Id*. at 358. This is particularly significant because the general SSA rulemaking authority in 42 U.S.C. § 405(a) is basically indistinguishable from the Secretary's general rulemaking authority in 38 U.S.C. § 501, quoted and discussed above. That general SSA rulemaking authority provides:

> The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the rights to benefits hereunder.

42 U.S.C. § 405(a).

In *Bowen*, the U.S. Supreme Court had ruled that SSA section 405(a) "contain[s] no express authorization of retroactive rulemaking." *Bowen*, 488 U.S. at 213. The Sixth Circuit concluded in *Combs* that that regulation, which the Social Security Administration had ruled was intended to be applied retroactively "to all pending cases", *Combs*, 400 F.3d at 357, had "raise[d] the bar on proof of disability based on obesity", *id.* at 359 (quoting *Kokal v. Massanari*, 163 F. Supp.2d. 1122, 1131 (N.D. Cal. 2001)). That court then stated: "When faced with the claim that a regulation has a retroactive effect, we 'must ask whether the new provision attaches new legal consequences to events completed before its enactment.'" *Id*. at 359 (quoting *Landgraf*, 511 U.S. at 269-70). The Sixth Circuit then held that the change in the obesity definition, a matter closely akin to the change in

regulation § 3.22(a) in the instant case, when applied to a pending case had "a retroactive effect and substantively alter[ed the appellant's] rights" and thus "clearly works a retroactive effect" that was impermissible. *Combs*, 400 F.3d at 359, 360.

We find the reasoning of *Combs* highly persuasive and fully applicable to the circumstances of the instant case. As we concluded above, the Court is aware of no express authority allowing VA to make its regulations retroactive. *See* 38 U.S.C. § 501. Indeed, the general rulemaking authority in section 501 is basically indistinguishable from that found in 42 U.S.C. § 405(a), quoted above, which the Supreme Court in *Bowen* and the Sixth Circuit in *Combs* held does not contain any express authority allowing the Commissioner to engage in retroactive rulemaking. *See Bowen*, *supra*; *Combs*, 400 F.3d at 358.

Under these circumstances, even the slightest retroactive effect would be questionable, and here, as we have concluded, the retroactive effect would be substantial, not slight – taking away a right then in existence to a section 1318 adjudication under the "hypothetically . . . entitled to receive" theory. Based on the foregoing, the Court holds that the appellant is entitled to pursue her section 1318 DIC claim based on that theory, and we will thus reverse the Board decision's determination to the contrary and remand the claim for readjudication.

Because of the above holding, the Court need not address the extent to which *Karnas* survives *Kuzma*. The Court notes, however, that the principal reliance placed by the Sixth Circuit on *Bowen*, one of the major cases underlying *Karnas*, 1 Vet.App. at 312, and on *Landgraf* suggests that to the extent that we apply *Karnas* in a manner not inconsistent with *Landgraf* and *Bowen*, the Court would be on safe grounds. On the other hand, we acknowledge that the principle underlying *Karnas* is that ***beneficial*** statutory or regulatory changes are intended to apply to cases pending before VA when the changes are made. In an appropriate case, that principle will have to be reevaluated, but this case is not the time for that reevaluation.

### D. *Section 5103(a) Notice and* **Cole** *Pleading Requirements*

Section 3 of the VCAA amended, inter alia, 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence"). VCAA § 3(a), 114 Stat. at 2096-97. Section 5103(a) provides:

> (a) REQUIRED INFORMATION AND EVIDENCE.–Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any

20

> information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a). On August 29, 2001, the Secretary issued regulations that implemented, inter alia, amended section 5103 in 38 C.F.R. § 3.159(b). 66 Fed. Reg. 45,620, 45,630-31 (Aug. 29, 2001). Subject to several exceptions not implicated by the current appeal, the Secretary made those regulations applicable to, inter alia, any claim for benefits, such as those in the instant cases pending before the Department and "not decided by VA" as of the November 9, 2000, date of the VCAA's enactment. 66 Fed. Reg. at 45,629; *see Pelegrini*, 18 Vet.App. at 118-19; *see also Mayfield v. Nicholson*, 19 Vet.App. 103, 128 (2005). Specifically, the amended regulation § 3.159(b)(1) provides, and provided at the time of the BVA decisions here on appeal, in pertinent part: "When VA receives a complete or substantially complete application for benefits, it will notify the claimant of any information and medical or lay evidence that is necessary to substantiate the claim." 38 C.F.R. § 3.159(b)(1) (2004).

As to the three section 5103(a) notice requirements, in *Quartuccio v. Principi* this Court specifically held that amended section 5103(a) and § 3.159(b)(1) require VA to inform the claimant of information and evidence not of record, if any, (1) that is necessary to substantiate the claim, (2) that VA will seek to obtain, and (3) that the claimant is expected to provide; the Court held implicitly that BVA failure to enforce compliance with those requirements can be remandable error. *Quartuccio*, 16 Vet.App. 183, 187 (2002). Recently, in *Mayfield*, this Court discussed extensively the requirements for the Secretary to fulfill his notice obligations, and the application of the rule of prejudicial error by this Court under 38 U.S.C. § 7261(b)(2) both in general and regarding any notice deficiencies, including the burdens on an appellant, pursuant to Rule 28 of the Court's Rules of Practice and Procedure (Rules), and the Secretary in connection with the Court's taking due account of the prejudicial-error rule. *See Mayfield*, 19 Vet.App. at 126-27.

This Court has held that the notice provisions of the VCAA apply to a DIC claim. *See Mayfield*, 19 Vet.App. at 121-22 (applying VCAA to section 1310 DIC claim). As to a section 1318

DIC claim, prior to the enactment of the VCAA the Court established, pursuant to *Cole*, *supra*, a specific pleading requirement based on a "hypothetically . . . entitled to receive" theory. In *Cole*, the Court held that "a claimant must, prior to the Board decision, set forth how, based on the evidence in the veteran's claims file, or under VA's control, at the time of the veteran's death and the law then applicable, the veteran would have been entitled to a total disability rating for the 10 years immediately preceding the veteran's death." *Cole*, 13 Vet.App. at 278 (internal citations omitted). However, it is now necessary to read this Court's December 1999 opinion in *Cole* in light of the subsequent November 9, 2000, enactment of the VCAA.

In the instant case, the appellant's September 1996 DIC claim was pending at VA at the time of the VCAA's November 9, 2000, enactment; therefore, the VCAA-notice provisions apply to her claim. *See Pelegrini*, 18 Vet.App. at 118-19; *see also Mayfield*, 19 Vet.App. at 128. The Board found that the October 2002 SSOC had informed the appellant of the information and evidence necessary to substantiate her section 1318 DIC claim and that the Secretary's obligations under the VCAA and its implementing regulation were thus satisfied. R. at 2- 4. The October 2002 SSOC informed the appellant of the substance of the provisions of section 1318(b)(1) and (b)(2) and of the RO's decision to deny her DIC claim "under the provisions of 38 U.S.C. § 1318" because the RO found that the claims file showed that the veteran "was rated 100[%] since 1991" and thus had "less than 10 years of being totally disabled" immediately before his death in August 1996. R. at 394.

The appellant argues that VA failed to notify her of the evidence necessary to substantiate her section 1318 DIC claim based on a "hypothetically . . . entitled to receive" theory and that, therefore, the Court cannot now impose on her DIC claim the *Cole* specificity requirement for pleading such theory. App. Suppl. Br. at 4-6. The Secretary argues that section 5103(a) does not require VA to advise a claimant of the *Cole* specificity requirement or "how to articulate her claim." Sec'y Suppl. Br. at 7. The Court notes that the Secretary does not dispute that section 5103(a) applies to a section 1318 DIC claim. The Court also notes that in prior opinions the Court has interpreted the words "entitled to receive" in section 1318 to mean that they provide an avenue for a claimant to receive section 1318 DIC benefits based on a "hypothetically . . . entitled to receive" theory, and that such theory is a part of that DIC claim. *E.g., Cole*, *Wingo*, *Carpenter*, and *Green*, all *supra*. Accordingly, the Court holds that section 5103(a) requires the Secretary to notify a section

1318 DIC claimant of any information and evidence not of record that is "necessary to substantiate" the section 1318 DIC claim and that this includes information and evidence necessary to substantiate a section 1318 DIC claim on the basis that the veteran was "hypothetically . . . entitled to receive" disability compensation for a service-connected disability rated totally disabling for at least 10 years prior to his death. 38 U.S.C. § 1318(b). To avoid any possible misunderstanding, the Court notes that it is not here holding that notice of the *Cole* pleading requirement must be a part of VCAA notice in a section 1318 case.

In the instant case, the Court notes that the October 2002 SSOC did not include notice of the information or evidence necessary to substantiate a section 1318 DIC claim on the basis that the veteran was "entitled to receive",[4] let alone "hypothetically . . . entitled to receive", disability compensation for a service-connected disability rated totally disabling for at least 10 years prior to his death. 38 U.S.C. § 1318(b). The Court thus concludes that the October 2002 SSOC did not inform the appellant what information or evidence was needed to substantiate her section 1318 DIC claim based on a "hypothetically . . . entitled to receive" theory.

Accordingly, the Court holds that the Secretary did not fulfill his section 5103(a) duty to notify the appellant about what information or evidence was needed to substantiate her section 1318 DIC claim. Also, this conclusion that the Secretary failed to provide notice as to the first notice requirement necessarily subsumes a conclusion that the Secretary also failed to notify the appellant about the second and third notice requirements concerning who would be responsible for seeking

---

[4] The Court notes that the record on appeal contains a June 10, 2002, letter from a Department of Veterans Affairs (VA) regional office (RO) to the appellant that references a claim for "*[s]ervice [c]onnected* [d]eath [p]ension", describes "[d]eath pension" as a "benefit payable to a surviving spouse or child(ren) because of the veteran's ***nonservice-connecte*d** death", and states that to establish entitlement to this benefit, the evidence must show, inter alia, that "[a]t the time of death, the veteran was receiving or entitled to receive compensation or retired pay for a service-connected disability based on service during a period of war." R. at 379-80 (emphasis added). The Court notes that the appellant had applied for death pension benefits (R. at 270) and that in 1996 she had been awarded non-service-connected death-pension benefits (R. at 336). Although the June 2002 letter references "entitled to receive", it apparently does so in connection with a chapter 15 claim ("Pension for Non-Service-Connected Disability or Death or for Service"), and the Court notes that 38 U.S.C. § 1541 ("Surviving spouses of veterans of a period of war") contains the "entitled to receive" language. Although it is extremely difficult to understand precisely to what claim this letter refers (because it was sent after the non-service-connected pension had been awarded), there is no indication that it was referring to the appellant's DIC claim. Even if it were, the confusion between service connected and non-service connected described at the outset of this footnote would render the information in the letter sufficiently confusing so as to vitiate any possible compliance with section 5103(a). *See Mayfield v. Nicholson*, 19 Vet.App. 103, 125 (2005), *appeal docketed*, No. 05-7157 (Fed. Cir. June 14, 2005).

23

to obtain the information and evidence required in connection with the first notice requirement. The Court, therefore, holds that the Board erred in determining that the Secretary fulfilled his statutory obligation as to the three statutory content-of-notice requirements regarding the appellant's section 1318 DIC claim.

Regarding whether the first-notice-requirement error here was prejudicial, the Court has held that any error regarding the first notice requirement is of the type that has the "natural effect" of producing prejudice. *See Mayfield*, 19 Vet.App. at 122. In addition to this inherent prejudice, the Court concludes that the error here is specifically prejudicial in terms of the *Cole* pleading requirements because a "hypothetically . . . entitled to receive" basis existed under binding caselaw (*See Cole*, *Wingo*, *Carpenter*, and *Green*, all *supra*) at the time that her claim was pending at VA.

Although any error with respect to the second and third notice requirements is generally not of the type that has the "natural effect" of producing prejudice, and an appellant, pursuant to Court Rule 28, must plead prejudice in terms of the fairness of the adjudication, *Mayfield*, 19 Vet.App. at 122, the Court holds that, because the basis for concluding that the Secretary failed to fulfill the second and third notice requirements derives from the first-notice-requirement error, it follows that the same conclusions as to prejudice from that first-notice-requirement error apply to any second- and third-notice-requirement errors. Accordingly, the Court concludes that the second- and third-notice-requirement errors here, which derive from the inherently prejudicial first-notice-requirement error, are also inherently prejudicial.

Because the natural effect of the notice error as to the first notice requirement (and the derivative second and third notice errors) is to produce prejudice, the Secretary has the "burden of demonstrating that there was clearly no prejudice . . . based on any failure to give notice" as to these requirements. *See Mayfield*, *supra*. In other words, the Secretary must demonstrate lack of prejudice in terms of the fairness of the adjudication. *Id.* at 121. In this regard, the Secretary maintains that there was no prejudice based on any failure to give section 5103(a) notice as to the "hypothetically . . . entitled to receive" theory because the appellant is not entitled to section 1318 DIC under that theory as a matter of law. Sec'y Suppl. Br. at 5, 7. He argues that, pursuant to *Cole*, 13 Vet.App. at 278, a "hypothetically . . . entitled to receive" theory of DIC must be based on the evidence in the veteran's claims file or under VA's control at the time of the veteran's death in August 1996, and

that the record in this case does not show entitlement to a 100% disability rating for the 10 years immediately prior to the veteran's death. *Id.* at 4-5. He asserts that, according to the record, it is "impossible" for the appellant to satisfy the *Cole* pleading requirement because (1) the record shows no medical treatment for the veteran between 1975 and 1989; and (2) the deterioration of his condition, which resulted in his entitlement to a 100% disability rating did not take place until April 1991, five years prior to his death in 1996. Suppl. Br. at 5. He maintains that the record shows that the veteran was entitled to a total disability rating for only five, not ten, years immediately preceding his death.

Although the Secretary is correct that the record on appeal (ROA) currently shows no medical treatment for the veteran between 1975 and 1989, the Secretary has not demonstrated that there are no documents from that time period (i.e., between 1975 and 1989) that were "under VA's control" at the time of the veteran's death in August 1996. The Court notes that the veteran had service-connected disabilities during that period and the medical records in the ROA show that he received treatment only at VA facilities. The Court notes further that the ROA reflects that immediately after his discharge from service in 1975 the veteran had been awarded service connection for, inter alia, diabetes mellitus, rated as 10% disabling, effective from January 1, 1975. R. At 154. The ROA also contains medical records showing VA medical treatment in August 1989 for cellulitis of the veteran's right foot, among other things (R. at 181-251), admission to a VA facility in April 1991 in connection with the below-the-knee amputation of his left foot (R. at 164-72), and admission to a VA facility in August 1996 in connection with leg edema, abdominal distention, and multicentric hepatoma (R. at 326). Finally, the Court notes that the Federal Circuit in *NOVA II* has directed further rulemaking on the issue concerning whether sections 1318 and 1311 can be interpreted to bar DIC claims where the survivor seeks to reopen on grounds of new and material evidence. *NOVA II*, 314 F.3d at 1382; *cf. Hix II* (allowing new evidence); *Hatch* (same).

Accordingly, the Court concludes that the Secretary has not met his burden by persuading the Court that the purpose of the notice was not frustrated – e.g., by demonstrating that section 1318 DIC could not possibly have been awarded as a matter of law. *See Mayfield*, 19 Vet.App. at 121. Hence, the Secretary did not demonstrate that the first-notice-requirement error was (and the derivative second- and third- notice-requirement errors were) clearly not prejudicial. We, therefore,

will reverse the Board's determination that the Secretary satisfied his VCAA notice obligations and will remand the matter for such compliance, including notification that the appellant may prevail on her section 1318 DIC claim if she were to demonstrate that the veteran was "entitled to receive" disability compensation for a service-connected disability rated totally disabling for at least 10 years prior to his death, 38 U.S.C. § 1318(b), which includes the "hypothetically . . . entitled to receive" theory, in the course of the readjudication on remand.

Based on the foregoing, we conclude that it would be fundamentally unfair to the appellant for the Court to apply the *Cole* pleading requirement when the Secretary had provided her no notice of the evidence needed to substantiate a "hypothetically . . . entitled to receive" basis for her section 1318 DIC claim.[5] Hence, the Court holds that the appellant's failure to meet the specificity requirement set forth in *Cole, supra*, for pleading a "hypothetically . . . entitled to receive" section 1318 claim is not dispositive of this appeal.

## III. Conclusion

On the basis of the foregoing analysis, the ROA, and the parties' pleadings, and having "take[n] due account of the rule of prejudicial error" under 38 U.S.C. § 7261(b)(2), *see Conway v. Principi*, 353 F.3d 1156, 1159 (Fed.Cir. 1997); *Mayfield, supra*, the Court will reverse in part and vacate in part the June 2003 Board decision and remand the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1318, 5103, 5103A, 5107, 7104(a), (d)(1); 38 C.F.R. §§ 3.22 (1999); 38 C.F.R. § 3.159(b), (c); *Wingo, Carpenter*, and *Green*, all *supra*; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion and in accordance with 38 U.S.C. § 7112 (requiring

---

[5] *Cf. Thurber v. Brown*, 5 Vet.App. 119, 123 (1993) (holding "that before the [Board of Veterans' Appeals (BVA)] relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent [Statement of the Case (SOC)] or [Supplemental] SOC with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it," *id.* at 126, and noting "'underlying concepts of procedural regularity and basic fair play'" regarding giving such notice (quoting *Gonzales v. United States*, 348 U.S. 407, 411-12 (1955)); *cf. also Sutton v. Brown*, 9 Vet.App. 553, 569-70 (1996) (discussing fair-process procedure for BVA to provide notice of its intent to adjudicate case based on issue or evidence (and of intended reliance on that evidence to deny claim) not addressed by VARO); *Austin v. Brown*, 6 Vet.App. 547, 551-52 (1994) (discussing "considerations of fair process" in obtaining and considering Board medical adviser's opinion in adjudication of claim and holding that "evidence [must] be procured by the agency in an impartial, unbiased, and neutral manner").

Secretary to "take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court"); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that free-standing predecessor of section 7112, applies to all elements of claim remanded by the Court or Board), and in accordance with all applicable law and regulation. *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim, and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED IN PART, VACATED IN PART, AND REMANDED.